IN THE MATTER OF CLIFFORD LAFAYETTE TATE.

(Filed 16 December, 1953.)

**1. Insane Persons § 1—**

G.S. Ch. 35 deals only with inebriates and mental incompetents in matters of a civil nature; G.S. Ch. 122, Art. 6, deals exclusively with mentally disordered criminals.

**2. Insane Persons § 17—**

A person committed to a State Hospital under the provisions of G.S. 122-84 because of mental incapacity to answer to an indictment in the Superior Court remains in the technical custody of that court and upon his recovery must be returned to it for trial, G.S. 122-87, and may be discharged only by a judge of the Superior Court, either at term or by writ of *habeas corpus*, G.S. 122-86.

**3. Same—**

A person accused of crime who is committed to a State Hospital under the provisions of G.S. 122-84 may not procure his release in a proceeding instituted under G.S. 35-4.

APPEAL by respondent guardian from *Rudisill, J.,* June Term, 1953, GUILFORD.

Petition under G.S. 35-4 for adjudication of sanity and release from the State Hospital for the Insane at Raleigh, N. C.

In June 1928, petitioner was put on trial in the Superior Court of Guilford County under a bill of indictment for a felonious assault. He pleaded that he was mentally incapable of pleading to the bill of indictment or preparing his defense. The jury so found. It was thereupon duly adjudged that the petitioner was insane and it was ordered that he be confined in the State Hospital "under and by virtue of the provisions of Section 6236 of the Consolidated Statutes of North Carolina" (now G.S. 122-83).

On 14 October 1953 counsel for petitioner filed a petition before the clerk of the Superior Court of Guilford County. The petition was filed under the provisions of G.S. 35-4, and it is alleged therein: "That on the ...... day of .... ............, 19....., your petitioner was adjudged incompetent to handle his affairs, and since that time has been confined to the State Hospital in Raleigh . . ." He prayed that his guardian, the re-

spondent Kate Tate Bain, be made a party and that the court summon a jury and make inquiry as to his present sanity as provided by G.S. 35-4.

The guardian filed answer and an amended answer in which she alleges that petitioner was committed to the insane asylum in a criminal cause in which he pleaded want of mental capacity to plead to the indictment, that he was committed under the provisions of G.S. 122-84, and that the court is without jurisdiction in this proceeding to order the release of the petitioner. She moved that the petition be dismissed.

Upon hearing the motion to dismiss, the clerk found as a fact that petitioner was confined under G.S. 122-84, as alleged; concluded that petitioner, notwithstanding the manner of his confinement, is entitled to seek his release under G.S. 35-4; and entered his order denying the motion to dismiss. The guardian excepted and appealed to the judge of the Superior Court.

At the hearing in the court below, the judge made full findings of fact as here summarized, affirmed the order of the clerk, and remanded the proceeding for hearing upon the merits under G.S. 35-4. The guardian excepted and appealed.

*Moseley & Holt for respondent appellant.*
*W. Brantley Womble and Thomas Turner for petitioner appellee.*

BARNHILL, J. Petitioner stood indicted, charged with the commission of a felony. Through counsel he pleaded that he was mentally incapable of pleading to the indictment or preparing his defense. Thereupon the court proceeded to ascertain the merits of the plea as provided in G.S. 122-84 and committed petitioner to the State Hospital at Raleigh. May he now procure his release in a proceeding instituted under G.S. 35-4? We are constrained to answer in the negative.

It is needless for us to enter into a lengthy discussion of the difference in the scope, purpose, and intent of G.S. Ch. 35 on the one hand, and G.S. Ch. 122 on the other, or to undertake to reconcile apparently conflicting and inconsistent provisions therein. Suffice it to say that G.S. Ch. 35 deals only with inebriates and mental incompetents in matters of a civil nature. Proceedings may be had thereunder to admit inebriates and mental incompetents to a State Hospital for treatment; for the appointment of guardians; for the discharge after commitment, and the like. There is no provision therein for the commitment or discharge of a person who stands indicted, charged with the commission of a felony, who pleads that he is incapable for the want of understanding to plead to the bill of indictment or prepare his defense.

Conversely, G.S. Ch. 122, Art. 6, deals exclusively with mentally disordered criminals. It provides the procedure for (1) the ascertainment

of mental incapacity; (2) the commitment, and (3) the discharge of mental incompetents convicted of or charged with the commission of a felony.

"All persons who may hereafter commit crime while mentally disordered, and all persons, who, being charged with crime, are adjudged to be mentally disordered at the time of their arraignment, and for that reason cannot be put on trial for the crimes alleged against them, shall be sent by the court before whom they are or may be arraigned for trial, when it shall be ascertained by due course of law that such person is mentally disordered and cannot plead, to the State Hospital at Raleigh . . . or to the State Hospital at Goldsboro . . ."

Under the terms of G.S. 122-84, "Any person accused of the crime of murder . . . or other crime" who "shall be found by the court to be without sufficient mental capacity to undertake his defense or to receive sentence after conviction, the court . . . shall detain such person in custody until an inquisition shall be had in regard to his mental condition . . ." If it is found that he is mentally incapable, the judge shall commit him as provided in sec. 122-84, "to be kept in custody therein (State Hospital) for treatment and care as herein provided. Such person shall be kept therein . . . until restored to his right mind . . ."

"When a person committed to a State Hospital under this section as unable to plead shall have been reported by the hospital to the court having jurisdiction as being mentally able to stand trial and plead, the said patient shall be returned to the court to stand trial as provided in sec. 122-87."

Then in sec. 122-87, it is provided that "Whenever a person confined in any hospital for the mentally disordered, and against whom an indictment for crime is pending, has recovered or has been restored to normal health and sanity, the superintendent of such hospital shall notify the clerk of the court of the county from which said person was sent, and the clerk will place the case against said person upon the docket of the superior court or criminal court of that county for trial." This section contains other provisions not material here.

That the Legislature intended that the criminal insane and those who may plead insanity or want of understanding to plead to a bill of indictment shall be committed to and discharged from a mental institution of the State only by a judge of the Superior Court is supported by other sections of this chapter.

"When it shall appear that any mentally disordered person under commitment to and confined in a hospital for the mentally disordered *but not charged with a crime or under sentence* shall have shown improvement in his mental condition . . ." he may be released on probation by the superintendent. G.S. 122-67. See also G.S. 122-84, 86, 90.

Thus it appears that the commitment to a State hospital of a person who pleads want of mental capacity to answer to an indictment does not end the jurisdiction of the Superior Court in which the indictment is pending. The petitioner remains in the technical custody of that court and upon his recovery must be returned to it for trial. He may, however, be heard under a writ of *habeas corpus*. G.S. 122-86. See also G.S. 122-87.

The provisions of G.S. Ch. 122, Art. 6, in no uncertain terms, prescribe the method for obtaining the discharge of a person accused of a felony and who has been committed to a State hospital under an inquisition bottomed on his plea that he was mentally incapable of pleading to the bill of indictment or preparing his defense. It does not include a proceeding under G.S. 35-4.

The amendments—amounting to a virtual rewriting—of our statutes relating to the criminal insane contained in ch. 952, S.L. 1945, render our former decisions bearing on the question here presented of doubtful value. But see *S. v. Pritchett,* 106 N.C. 667, and 44 C.J.S. 285, sec. 129.

This record discloses that the petitioner has been confined in the State hospital since 1928. Apparently no action has been taken by the superintendent, G.S. 122-87, or the court officials to ascertain his present mental condition so that he may be put on trial if now sane. We reverse the order entered and at the same time direct that the original cause be reinstated on the criminal trial docket for the attention of the solicitor and trial judge. In this connection we may note that the judge has the authority to direct the hospital officials to give temporary custody of the petitioner to the sheriff of the county to the end that he may produce the petitioner in court for further inquiry as to his present mental condition.

Reversed.