STATE OF NORTH CAROLINA v. WILLIE LEE WOODS, ALIAS AJABA X

No. 100

(Filed 13 June 1977)

1. Criminal Law § 29.1— mental capacity to stand trial—motion for psychiatric examination—evidence—hearing—denial proper

The trial court did not err in denying defendant's request for a commitment and psychiatric examination to determine his capacity to stand trial, since (1) no evidence was presented in support of defend-

State v. Woods

ant's motion other than defendant's record at Butner, which was seven years old and which indicated his competency to function in society, and defense counsel's conclusory statements concerning defendant's criteria for deciding right and wrong, and (2) defendant was heard on his request and expressly declined an opportunity to be heard further, the hearing requirements of G.S. 15A-1002(b)(3) thus being satisfied.

2. **Criminal Law § 91.6— continuance to review taped confession—denial proper**

Defendant failed to show error in the trial court's denial of his motion for a continuance to review a taped confession which defendant had allegedly made to police officers in Florida and which defense counsel received the day before trial where the State made no delay in making the taped confession available to defense counsel who did prior to trial review and evaluate it, and where the tape was identical to a written copy already in defendant's possession.

3. **Criminal Law § 101.2— jurors' reading of newspaper article—defendant not prejudiced**

The trial court did not abuse its discretion in denying defendant's motions for mistrial and for *voir dire* of the jury after several jurors read a newspaper account of the first day of the trial, since the court instructed the jury that their decision must be based entirely upon the evidence they had heard at trial and they must not be influenced by anything they had seen in a newspaper, and since the trial judge himself was acquainted with the newspaper article which merely recounted testimony already heard by the jurors.

4. **Constitutional Law § 80; Homicide § 31.1— first degree murder.—life sentence substituted for death penalty**

A sentence of life imprisonment is substituted for the death penalty imposed upon defendant's conviction of first degree murder.

DEFENDANT appeals from judgment of *Crissman, J.*, at the 20 May 1976 Session of FORSYTH Superior Court. Docketed and argued as No. 163, Fall Term 1976.

*Rufus L. Edmisten, Attorney General, by Guy A. Hamlin, Assistant Attorney General, and Alfred N. Salley, Assistant Attorney General, for the State.*

*Dennis T. O'Madigan, Attorney for defendant appellant.*

EXUM, Justice.

Defendant was tried and convicted of first degree murder upon a proper bill of indictment. He was sentenced to death.

Other than a meritorious challenge to the death penalty, defendant presents three questions on appeal challenging the

correctness of the trial court's rulings in: (1) denying defendant's motions for commitment and examination by a psychiatrist to determine his capacity to stand trial; (2) denying defendant's motion for a continuance to review and evaluate a taped confession which defense counsel received the day before the trial; and (3) denying defendant's motions for mistrial and for *voir dire* of the jury on grounds of some jurors' exposure to a newspaper article concerning the trial. We find no merit in any of these contentions.

The state's evidence tended to show that defendant and two unnamed companions perpetrated an armed robbery at a convenience store in Winston-Salem on 20 December 1974. Two persons who were in the store at the time testified defendant was one of the three men who came into the store, and that he was carrying a gun. At about the time the three left the store, a car pulled up in front. Defendant and one companion approached the car, shouting "This is a holdup." Defendant asked the driver of the car, a fireman named Paul Toney, for his money. As Mr. Toney was handing some money out the window, defendant shot him twice. Mr. Toney's wounds resulted in his death. Defendant and his companions left the scene, divided the money obtained in the armed robberies and defendant left the state, going first to Massachusetts and later to Florida.

To establish its case, the state presented, among other witnesses, the two who identified defendant as one of those who had robbed the convenience store, a witness who was in the car with Mr. Toney when he was shot but who could not identify defendant, a female friend of defendant's to whom he had confided the story of the robbery and shooting of the Winston-Salem fireman some time after the incident, and an Orlando, Florida, police officer to whom defendant confessed his role in these crimes, including the killing of Mr. Toney. A tape recording of the confession was introduced at trial.

Defendant presented no evidence.

State v. Woods

We first note defense counsel's failure in several instances to follow the mandates of Rule 10[1] of the Rules of Appellate Procedure. Exception No. 2, purportedly supporting his first argument, follows not the denial of his motion for commitment but the denial of the motion for a continuance. Under his second argument, where Exception No. 2 should properly be referenced, defense counsel refers to Exception No. 3, which follows no action by the trial court at all. That exception is apparently taken to defendant's trial counsel's own motion for exclusion of evidence. Defendant's third argument is set out in conjunction with his objection to the imposition of the death penalty. Under the argument addressing denial of defendant's motions regarding the newspaper article, defendant lists Exception No. 4, which follows the court's final ruling on the commitment request, and Exception No. 5 which follows the court's invitation to hear defendant's trial counsel's arguments concerning the newspaper article. The specific page in the record where each exception appears is not set out following assignments of error as required by Rule 10(c).

The carelessness of defense counsel in setting out his exceptions has occasioned an inordinate investment of this Court's time in an effort to consider the merits of his arguments. Under Rule 10(a) the second and third arguments, at least, are not properly presented for our consideration. *State v. McMorris*, 290 N.C. 286, 225 S.E. 2d 553 (1976). Nevertheless, because of the gravity of the offense charged and the

---

1."(a) Function in Limiting Scope of Review. Except as otherwise provided in this Rule 10, the scope of review on appeal is confined to a consideration of those exceptions set out and made the basis of assignments of error in the record on appeal in accordance with this Rule 10. No exception not so set out may be made the basis of an assignment of error; and no exception so set out which is not made the basis of an assignment of error may be considered on appeal. Provided, that upon any appeal duly taken from a final judgment any party to the appeal may present for review, by properly raising them in his brief, the questions whether the judgment is supported by the verdict or by the findings of fact and conclusions of law, whether the court had jurisdiction of the subject matter, and whether a criminal charge is sufficient in law, notwithstanding the absence of exceptions or assignments of error in the record on appeal.

. . . .

"(c) Assignments of Error—Form. The exceptions upon which a party intends to rely shall be indicated by setting out at the conclusion of the record on appeal assignments of error based upon such exceptions. Each assignment of error shall be consecutively numbered; shall, so far as practicable, be confined to a single issue of law; shall state plainly and concisely and without argumentation the basis upon which error is assigned; and shall be followed by a listing of all the exceptions upon which it is based, identified by their numbers and by the pages of the record on appeal at which they appear. Exceptions not thus listed will be deemed abandoned. It is not necessary to include in an assignment of error those portions of the record to which it is directed, a proper listing of the exceptions upon which it is based being sufficient."

severity of the sentence, and because we are reluctant to penalize this indigent defendant because of his counsel's omissions, we have entertained all the arguments presented and have carefully reviewed the record.

[1] Defendant first contends the court erred in denying his request for a commitment and psychiatric examination to determine his capacity to stand trial. In support of this argument he relies upon General Statute 7A-454 which provides:

> "Supporting services.— The court, in its discretion, may approve a fee for the service of an expert witness who testifies for an indigent person, and shall approve reimbursement for the necessary expenses of counsel. Fees and expenses accrued under this section shall be paid by the State."

In connection with this argument, defendant contends the denial of his request constituted a denial of equal protection.

The statute upon which defendant should properly have relied is not General Statute 7A-454, which provides for expert assistance in preparation for trial, *see State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977), but General Statute 15A-1002, which provides in pertinent part:

> "(a) The question of the capacity of the defendant to proceed may be raised at any time by the prosecutor, the defendant, the defense counsel, or the court on its own motion.

> "(b) When the capacity of the defendant to proceed is questioned, the court:

>> "(1) *May* appoint one or more impartial medical experts to examine the defendant and return a written report describing the present state of the defendant's mental health. . . .

>> "(2) *May* commit the defendant to a State mental health facility for observation and treatment for the period necessary to determine the defendant's capacity to proceed. In no event may the period exceed 60 days." (Emphasis added.)

That defendant is an indigent is irrelevant to the applicability of this statute. There is no equal protection issue presented.

On his original motion for psychiatric evaluation on 5 April 1976, defendant presented no evidence. He merely informed the court of the following grounds: (1) defendant had been a patient at Butner; (2) defense counsel had doubts about whether defendant's "criteria . . . for deciding what is right and what is wrong" were the same as his own; and (3) defendant's grandmother informed him defendant had always had psychiatric problems. The court denied the motion, observing that defendant "looks like he is right intelligent."

On 17 May 1976, the day before trial, defense counsel renewed his motion, but again offered no evidence and no new information. The court again denied the motion. The next day, apparently just before trial, defense counsel presented defendant's record showing a commitment at John Umstead Hospital, Butner, in 1969 with a notation of a "tentative mental diagnosis" of "anxiety — possibly schizophrenic reactive." This record concluded with the hospital superintendent's finding that defendant's commitment was terminated as he was then, in the superintendent's opinion, not injurious to himself or to society. The judge considered this record as if it had been presented at the hearing the day before, and confirmed his ruling.

Under General Statute 122-91, repealed when section 15A-1002 became effective 1 September 1975, the decision whether to grant a motion for commitment for psychiatric examination to determine competency lay within the sound discretion of the trial judge. *State v. Gray, supra,* 292 N.C. 270, 233 S.E. 2d 905 (1977); *State v. Washington,* 283 N.C. 175, 195 S.E. 2d 534 (1973), *cert. denied,* 414 U.S. 1132 (1974). The new statute contains no provision making the granting of such a motion mandatory, and the decision remains within the sound judicial discretion of the trial court.

We find nothing in this record to indicate that defendant lacked the capacity to stand trial. The last psychiatric examination made of him at Butner indicates his competency to function in society. No evidence at all other than his Butner record, which was some seven years old, and defense counsel's conclusory statements were presented in support of his motion. There is nothing indicating any reliance at trial upon a defense of insanity. No abuse of discretion in the denial of this motion is shown.

We are not inadvertent to General Statute 15A-1002 (b)(3) which requires the trial court to conduct a hearing on the question of defendant's capacity to stand trial when this capacity "is questioned." The record is not entirely satisfactory as to whether and to what extent defendant was accorded a hearing. It seems, though, that defendant was heard on this question and expressly declined an opportunity to be heard further. The record reveals the following colloquy between the prosecuting attorneys (Tisdale and Yeatts), the court, and defense counsel:

"MR. TISDALE: I would like to ask if he wishes a hearing on the competency of Willie Woods to proceed.

"MR. YEATTS: We would like this record to show that that hearing has been held at this time. It is my understanding of this statute that he has a right to have a hearing on the motion, and if he wants to present any evidence I'd like for that to be in the record, of course, at this time.

"THE COURT: Well, I assumed that he did not. I didn't hear anything about it.

"MR. O'MADIGAN: No. We are asking the permission of the Court to order that a psychiatric examination be performed. That, of course, is our position and then come back to the Court with the results of that psychiatric examination.

"THE COURT: Well, I will just deny that. I believe that is all for today. Recess until 9:30 in the morning."

Clearly, the trial court considered all information relative to defendant's capacity which was presented to it and found, implicitly at least, that defendant was competent to proceed to trial. That defendant makes no complaint about the lack of a hearing on this threshold question bolsters our view that the requirements of General Statute 15A-1002(b)(3) were, in fact, satisfied at trial.

[2] Defendant next contends the court erred in denying his motion for a continuance to review the taped confession which defendant had allegedly made to police officers in Orlando, Florida. This argument is wholly without merit. Defense counsel knew of the tape and specifically referred to it in his request for discovery on 24 March 1976. The tape came to the state's attorney on 13 May 1976, and defense counsel's office was noti-

State v. Woods

fied of its availability the same day. Defense counsel attempted to pick up the tape from the state on Thursday before the trial, but found no one at the office. When he finally obtained the tape on Monday, 17 May, the day before the trial, he discovered it to be identical to a written statement signed by defendant which defense counsel had obtained much earlier.

"A new trial will be awarded because of a denial of a motion for continuance only if the defendant shows that there was error in the denial and that the defendant was prejudiced thereby." *State v. Harrill,* 289 N.C. 186, 189, 221 S.E. 2d 325, 327-28, *death sentence vacated,* 96 S.Ct. 3212 (1976); *see State v. Harris,* 290 N.C. 681, 228 S.E. 2d 437 (1976). Here, where the state made no delay in making the taped confession available to defense counsel who did prior to trial review and evaluate it, and where the tape was identical to a written copy already in defendant's possession, no prejudicial error in the denial of the motion for continuance is shown.

[3] Defendant's final argument concerns the court's denial of motions for mistrial and for *voir dire* of the jury after several jurors read a newspaper account of the first day of the trial. The trial judge read the article, which constituted merely a reiteration of testimony adduced at the trial. The tone of the article was objective and non-inflammatory. Nor does defendant's picture, which appears with the article, seem likely to produce prejudice.

The motion for mistrial was directed to the sound discretion of the trial judge. *State v. Swift,* 290 N.C. 383, 226 S.E. 2d 652 (1976); *State v. Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975); *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190 (1968). No abuse of discretion is shown here. The motion for mistrial was properly denied.

The court carefully instructed the jury that their decision "must be based entirely upon the evidence" they had heard introduced at trial and that they were "not to be influenced by anything [they] may have seen in a newspaper somewhere or any outside influence." In light of this instruction and of the trial judge's acquaintance with the article, which merely recounted testimony already heard by the jurors, we can perceive no prejudice to defendant arising from the denial of his motion for a *voir dire* examination of the jurors.

In an annotation on the subject of newspaper articles read by jurors after commencement of trial, 31 A.L.R. 2d 417, it is correctly observed that the ultimate decision as to the effect of such articles must rest in the sound judicial discretion of the court in each instance and, further:

> "Nevertheless there are certain propositions which, through frequent application by the courts, may be referred to as general rules. Among these is the principle that a fair trial is not interfered with by a newspaper account of the trial which does not prejudice either party and could not be said to put either in a bad light in the minds of the jurors. This rule has been applied where the article merely sets forth an accurate and unbiased account of the occurrences which took place in the courtroom and in the presence of the jury, it being reasoned that what the jurors already knew first hand could not affect their decisions when later brought to their attention by something they read. The act of reading the newspapers may still constitute an irregularity, not condoned by the court, but be of such an inoffensive nature as not to warrant any remedial action." *Id.* at 421.

This assignment is overruled.

[4] Under *Woodson v. North Carolina*, 428 U.S. 280 (1976), the judgment of the superior court sentencing defendant to death must be vacated. *State v. Riddick*, 291 N.C. 399, 230 S.E. 2d 506 (1976). So that a sentence of life imprisonment may be substituted under the authority of 1973 Session Laws, Ch. 1201, § 7 (1974 Session), we remand this case to the Superior Court of Forsyth County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment imposing life imprisonment for the first degree murder of which defendant has been convicted; and (2) that in accordance with this judgment, the Clerk of the Superior Court issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the Clerk of Superior Court furnish to defendant and his counsel a copy of the judgment and commitment as revised in accordance with this opinion.

No error in the verdict.

Death sentence vacated.