STATE OF NORTH CAROLINA v. FLOYD EUGENE JACOBS

No. 8017SC773

(Filed 7 April 1981)

1. Criminal Law § 29– mental capacity to stand trial – sufficiency of evidence

The trial court did not err in finding that defendant was mentally capable of standing trial where the only evidence before the court was a psychiatric report which concluded that defendant was mentally capable of standing trial, the psychiatric report noted that "the [defendant] has had a fluctuating mental status and at intervals he may not be viewed as being competent," and defendant presented no evidence that his mental status has fluctuated in any manner since the date of the psychiatric report.

2. Criminal Law § 29.1– capacity of defendant to stand trial — absence of hearing following second examination

Where a hearing was held after the first commitment of defendant to determine his mental capacity to stand trial, and defendant did not seek to introduce any new or additional evidence except for the psychiatric report following his second commitment for a determination of his capacity to stand trial, the trial judge's review of the second psychiatric report was sufficient compliance with the hearing requirement of G.S. 15A-1002(b)(2), and failure of the court to make findings and conclusions following his review of the second psychiatric report was not error.

3. Criminal Law § § 34.4, 46.1– evidence of other crimes – admissibility to show time frame, flight

In this prosecution for burglary, evidence elicited from defendant on cross-examination concerning his arrest for certain traffic violations shortly

State v. Jacobs

after the crime occurred, including speeding and failure to stop for a blue light and siren, was competent to establish the time frame in which the burglary took place and to show flight.

4. **Burglary and Unlawful Breakings § 5– conviction of first degree burglary – motion to set aside verdict**

The trial court properly denied defendant's motion to set aside a verdict of guilty of first degree burglary as being against the greater weight of the evidence where the State's evidence tended to show that the victim was awakened during the night and saw defendant, dressed in a dark sweatshirt and bluejeans, standing in the hall in front of her bedroom door; the victim called to her grandson upstairs, who yelled that he was coming down with a gun, at which time defendant left the house; the grandson found a green sweatshirt; police stopped defendant at a roadblock near the victim's home, at which time defendant had on bluejeans and no shirt; defendant stated that he was not in the victim's house; defendant testified he saw the victim standing in the hall in front of her bedroom door, but the State's evidence tended to show that the victim was confined to bed or a wheelchair at the time; and defendant testified that he went to the victim's home to talk to the victim's daughter about a job with a certain tobacco company, but the daughter testified that she did not know defendant and that she performed a job inconsistent with the job defendant suggested that she performed.

APPEAL by defendant from *Walker, Judge.* Judgment entered 2 April 1980 in Superior Court, STOKES County. Heard in the Court of Appeals on 23 January 1981.

Defendant was convicted of first degree burglary and sentenced to not less than ten nor more than fourteen years in prison.

On 22 October 1979 defendant was admitted to Dorothea Dix Hospital, pursuant to court order, for a determination of his competency to stand trial. In a discharge summary dated 6 November 1979, Dr. Billy Royal, the forensic psychiatrist who examined and evaluated defendant, set forth a psychiatric history that included prior diagnoses of schizophrenia and noted that the defendant's behavior was "somewhat inappropriate at times." Under the section of the discharge summary labelled "Psychiatric Evaluation and Opinions," Dr. Royal stated:

No thought disorder is noted. Memory appears to be adequate. Intellect is adequate. The patient is able to give adequate informational responses to the mental status questions. It is my impression that the patient is able to meet the minimal standards related to competency to proceed to trial.

On 29 January 1980, after the defendant was discharged from Dorothea Dix and before his trial, defendant's attorney filed a motion alleging that since October 1979 defendant had failed to cooperate with his attorney, had called his attorney profane names, had threatened to kill his attorney, and had been seen talking to bugs and birds. Defendant's attorney requested a determination by the court that defendant was incapable of proceeding to trial. Based on the motion filed and the testimony of two witnesses who testified to irrational behavior by defendant, Judge Walker ordered defendant recommitted to Dorothea Dix for a determination of his capacity to proceed. Thus, defendant was again examined and evaluated by Dr. Royal.

In his second discharge summary, dated 12 February 1980, Dr. Royal made the following observations, among others: defendant has an IQ in the low 80's, which is consistent with low-normal intelligence; personality tests have indicated significant mental illness with patterns consistent with a schizophrenic process; defendant's functioning has improved over the previous hospitalizations; his ability to engage adequately in the interview situation is improved; he is able to respond to questions and his emotional response is appropriate for longer periods of time than heretofore noted; defendant is able to discuss his legal charges with consistency and appropriateness, and his judgment is poor but memory is adequate. Dr. Royal concluded as follows:

> It is my opinion that in this setting the patient is able to meet the minimal standards related to competency to proceed to trial. It is noted that the patient has had a fluctuating mental status and at intervals he may not be viewed as being competent.

Defendant's case was called for trial at the 31 March 1980 regular criminal session of Stokes County Superior Court. After entering a plea of not guilty to the burglary charge, defendant renewed his motion to be declared incompetent to stand trial. This motion was based on the second discharge summary of Dr. Royal; no additional evidence was tendered. The court denied the motion, stating that it found defendant capable of standing trial at that time.

The State's evidence tended to show that on the night of 29 September 1979 Annie Arnel Nelson, who lived in her home with her daughter and two grandchildren, was awakened by dogs barking outside her house; that when she looked around she saw defendant, dressed in a dark sweatshirt and bluejeans, standing in the hall in front of her bedroom door; that Mrs. Nelson, who was confined to bed or a wheelchair at the time, called to her grandson upstairs, who, himself, had been awakened by the dogs barking; that Mrs. Nelson's grandson heard footsteps downstairs and yelled that he was coming down with a gun, at which time defendant left the house; that Mrs. Nelson's grandson did not see defendant when he got downstairs, but he heard a car start up and come by the driveway; that he also found a green sweatshirt; that police had a road block set up near Mrs. Nelson's house in pursuit of a stolen car and stopped defendant at the roadblock at which time defendant had on bluejeans and no shirt; that Mrs. Nelson's grandson came down to the roadblock shortly after defendant was stopped, reported a burglary and identified the car being driven by defendant as the one he had heard outside his house; that Mrs. Nelson's house was locked when she went to bed, and she did not give defendant permission to enter her house; and that nothing was missing from her house after the incident.

Defendant testified that on the night in question he had gone to pick up his shirts at the home of one of Mrs. Nelson's neighbors; that when the neighbors failed to answer the door, he went to Mrs. Nelson's house to talk to her daughter, Frances Nelson, about a job with R.J. Reynolds' Tobacco Company; that he was wearing blue pants and a green shirt; that he did not go into Mrs. Nelson's house but stepped up on the back porch and opened the screen door, which was not locked; that he looked into the house and saw Mrs. Nelson standing there; that Mrs. Nelson saw him standing at the doorway, but she did not say anything; that he did not say anything to Mrs. Nelson because he did not know her; and that he wanted to get away because she was not the person he wanted to see.

*Attorney General Edmisten, by Assistant Attorney General Norma S. Harrell, for the State.*

*Stover, Dellinger & Browder, by James L. Dellinger, Jr. for defendant-appellant.*

BECTON, Judge.

[1]  The defendant first contends that the trial court committed prejudicial error in concluding that he was mentally capable of standing trial. The defendant also contends that the trial court erred by failing to make specific findings of fact as to his capacity to stand trial.

At trial, defendant renewed his earlier motion, under G.S. 15A-1001, "concerning the competency of the defendant to stand trial." Defendant's renewed motion was based entirely upon the second discharge summary of the psychiatrist, Dr. Billy W. Royal, who opined that the defendant was "able to meet the minimum standards relating to competency to proceed at trial." We note that Dr. Royal's first discharge summary, dated 6 November 1979, also indicates that defendant was capable of standing trial. Moreover, Dr. Royal, in his second discharge summary, found that defendant had improved since the first admission and was "able to discuss his legal charges with consistency and basic appropriateness. . . ." While it is clear that Dr. Royal also noted "that the [defendant] has had a fluctuating mental status and at intervals he may not be viewed as being competent," it is equally clear that defendant presented no evidence at the time he renewed his motion suggesting that his mental status had fluctuated in any manner since the second discharge summary of 12 February 1980. Significantly, there was no allegation that defendant failed to cooperate with his attorney; there was no suggestion that defendant acted irrationally during the seven week period between the second discharge summary and the 31 March 1980 trial.

Defendant had the burden of persuasion on his G.S. 15A-1001 motion. *State v. Womble,* 44 N.C. App. 503, 505, 261 S.E. 2d 263, 265 (1980). Defendant failed to carry this burden. Indeed, defendant introduced no additional evidence at the time of his renewed motion except Dr. Royal's second medical report which clearly indicated that defendant was capable of standing trial. Consequently, the trial court did not err in denying defendant's motion and in concluding that defendant was capable of standing trial.

[2]  On the facts of this case, it was not prejudicial error for the trial court to fail to make findings of fact and conclusions of law

in denying defendant's motion. The language in *State v. Womble, supra,* bears repeating:

> Better practice requires the trial court to make findings of fact in its order on a motion suggesting incapacity to proceed under G.S. 15A-1002. In the case *sub judice,* the court did not make findings of fact; however, such was harmless error inasmuch as the evidence presented would have compelled the trial court to find against defendant.

*Id.* at 505, 261 S.E. 2d at 265-66.

Under G.S. 15A-1002, of course, the court is required to hold a hearing to determine defendant's capacity to proceed. If an examination is ordered pursuant to G.S. 15A-1002(b)(2), the hearing is required to be held after the examination. Here, the record indicates that a hearing was held on 29 January 1980 after the first examination and discharge. No hearing was held following the second examination and discharge at the time the motion was renewed. However, defendant did not seek to introduce any new or additional evidence except for the psychiatric report. Under such circumstances, the right to a hearing has been held to be waived. *See, e.g., State v. Woods,* 293 N.C. 58, 64, 235 S.E. 2d 47, 50 (1977); *State v. Young,* 291 N.C. 562, 568, 231 S.E. 2d 577, 580-81 (1977); *State v. Potts,* 42 N.C. App. 357, 359, 256 S.E. 2d 497, 499 (1979); *State v. Williams,* 38 N.C. App. 183, 189, 247 S.E. 2d 620, 623 (1978). In this case there were no findings and conclusions for the court to make at a second hearing except to enumerate the findings in the second discharge summary. This the court was not required to do under *Womble.* Moreover, defendant did not object or except to the lack of a hearing at the time he renewed his motion or to the failure of the court to make findings of fact and conclusions of law. On the facts of this case, the trial judge's review of the second discharge summary — the only evidence before him — was sufficient compliance with the hearing requirement of G.S. 15A-1002(b)(2).

[3] In his next assignment of error, defendant contends that the trial court erred in allowing the State to cross examine him about pending criminal charges. Defendant's assignment of error was based on the portion of the cross examination that follows:

I don't know what time I went to Mrs. Nelson's house. I was arrested at 10:30 p.m. for traffic violation.

MR. DELLINGER: Objection.

THE COURT: Overruled.

MR. BOWMAN: Were you arrested for failure to stop for a blue light and a siren?

A. Yes, sir.

MR. BOWMAN: Were you arrested for speeding to elude arrest?

A. I don't know if I was arrested for failing to pursue and all.

Q. You don't know about that?

A. No.

Q. Were you arrested for careless and reckless driving after drinking?

A. No.

Q. Were you arrested for no operator's license?

A. Yes, sir.

Q. And all these were after you left the Nelson house.

A. Yes, sir.

Q. Were you also arrested at this time for the larceny of a vehicle?

MR. DELLINGER: Objection.

THE COURT: Overruled.

A. No.

EXCEPTION NO. 2.

As can be seen, defendant testified without objection that he was arrested at 10:30 p.m. for traffic violations. The objection that followed his testimony on this point was lodged too late. Further, there is no exception at this point. Moreover, there are no objections, motions to strike, or exceptions noted to any of

the next series of questions and answers concerning defend-
ant's arrest for specific traffic violations.

While the State is not generally allowed to show evidence of
a previous distinct, independent or separate offense, evidence
of other offenses is admissible if it tends to prove any other
relevant fact. If evidence of another offense tends to show
anything other than the character of the accused or his dis-
position to commit an offense of the nature of the one charged,
then that evidence is not inadmissible simply because it also
shows the accused to have committed an independent crime.
*See, e.g., State v. Barfield,* 298 N.C. 306, 328, 259 S.E. 2d 510, 528
(1979), *cert. denied,* 100 U.S. 3050 (1980); *State v. McQueen,* 295
N.C. 96, 123, 244 S.E. 2d 414, 430 (1978); *State v. Tate,* 294 N.C.
189, 196, 239 S.E. 2d 821, 826 (1978); *State v. Williams,* 292 N.C.
391, 396-97, 233 S.E. 2d 507, 510 (1977); *State v. Watson,* 287 N.C.
147, 160, 214 S.E. 2d 85, 93 (1975). In this case the evidence
tended to prove other relevant facts. The traffic arrests were
made as defendant was leaving the Nelson home and estab-
lished the time frame in which the alleged burglary took place.
Thus, they constitute part of the chain of circumstances sur-
rounding the crime. Speeding and the failure to stop for a blue
light and siren indicate an attempt to evade police officers and
suggest "flight." Evidence of flight, together with all other
facts and circumstances in the case, has long been recognized
as admissible on the question of "consciousness of guilt." *State
v. Lampkins,* 283 N.C. 520, 523, 196 S.E. 2d 697, 698 (1973). *See
also State v. Self,* 280 N.C. 665, 187 S.E. 2d 93 (1972).

The last question in the portion of the cross examination set
forth above concerns an arrest for larceny of a vehicle. Defend-
ant objected and preserved his objection to that question. Even
though the relevancy of an arrest for larceny of a vehicle is less
tenuous on the facts of this case than the series of questions
dealing with traffic violations, we find no prejudicial error in
the trial court's decision to overrule the objection. Indeed,
defendant's negative answer to the question seems to erase any
prejudice that might arise from the asking of the question. This
seems especially true when, as here, the defendant had just
previously answered that he had been arrested for traffic
offenses. *Compare State v. Brice,* 17 N.C. App. 189, 193 S.E. 2d
299 (1972), *cert. denied,* 283 N.C. 258, 195 S.E. 2d 690 (1973) (No
prejudice resulted when defendant was asked about being pre-

viously tried for another offense when his answer was unresponsive and he never admitted anything.), *with State v. Crews,* 296 N.C. 607, 252 S.E. 2d 745 (1979) (No prejudice resulted in allowing the defendant to be questioned about an outstanding warrant when the defendant testified that he did not know of any such warrant and when other evidence amply established his guilt.).

[4] In his final assignment of error, the defendant contends that the trial court erred in denying his motion to set aside the verdict as being against the greater weight of the evidence. Defendant's evidence was squarely in conflict with the State's evidence. He stated that he was not in the house; the State's evidence showed that he was in the house. Defendant's evidence was that Mrs. Nelson was up and moving around; the State's evidence indicated that Mrs. Nelson was physically incapable of being up and moving around. Defendant's evidence was that he went to talk to Mrs. Lamb, with an implication that he knew her; Mrs. Lamb, testifying for the State, said she did not know defendant and further testified that she performed a job inconsistent with the job defendant suggested that she performed. Under these circumstances, the trial judge properly submitted the conflict in the evidence to the jury for it to resolve. *See State v. Alexander,* 18 N.C. App. 460, 197 S.E. 2d 272, *cert. denied,* 283 N.C. 666, 198 S.E. 2d 721, *cert. denied,* 284 N.C. 255, 200 S.E. 2d 655 (1973).

A motion to set aside the verdict as being against the greater weight of the evidence is addressed to the trial judge's discretion and is not reviewable on appeal, in the absence of evidence of abuse of discretion. *State v. McLean,* 294 N.C. 623, 633, 242 S.E. 2d 814, 820 (1978); *State v. Puckett,* 46 N.C. App. 719, 724, 266 S.E. 2d 48 (1980); *State v. Shufford,* 34 N.C. App. 115, 119, 237 S.E. 2d 481, 484 (1977), *cert. denied,* 293 N.C. 592, 239 S.E. 2d 265 (1977). In this case, the trial judge did not abuse his discretion and commit prejudicial error by denying defendant's motion to set aside the verdict as being against the greater weight of the evidence.

In this trial, we find

No Error.

Chief Judge MORRIS and Judge VAUGHN concur.