STATE OF NORTH CAROLINA v. NIVALDO ROQUE BARRANCO

No. 8421SC623

(Filed 19 March 1985)

**1. Constitutional Law § 31 — refusal to appoint additional psychiatrist**

The trial court did not err in the denial of the Cuban defendant's motion for the appointment, at State expense, of an additional psychiatrist fluent in both Spanish and English to evaluate his capacity to proceed to trial and his criminal responsibility at the time of the alleged offenses after defendant had twice been evaluated by psychiatrists at Dorothea Dix Hospital where defendant showed only that the examination by the first psychiatrist was hindered by the language barrier, but defendant failed to point out any information which could have been made available to a Spanish-speaking psychiatrist which was not made available to the two psychiatrists who evaluated defendant, and defendant did not challenge the competence of either psychiatrist except to the extent that they are not bilingual. G.S. 7A-450(b).

**2. Criminal Law § 29 — competency to stand trial**

The trial court did not err in finding that defendant was competent to proceed to trial where the State relied upon the evaluations of two psychiatrists who concluded that defendant was competent to stand trial, defendant's testimony bore little relationship to his mental capacity at the time of trial, and defendant admitted on cross-examination that he understood the charges against him and was able to talk with his attorney.

**3. Criminal Law § 63.1 — opinions by psychiatrist — sanity — intoxication — pretense of insanity**

A forensic psychiatrist was properly permitted to state his opinions that defendant could distinguish between right and wrong at the time of the crimes, that his intoxication did not negate his ability to form any specific intent, that defendant's suicide gestures were not a serious suicide attempt, and that defendant exaggerated his presentation of himself as being mentally ill in order to avoid prosecution where the psychiatrist's opinions were based upon his personal observations and examinations of defendant and upon observations and tests performed and recorded by others.

**4. Criminal Law § 112.6 — defense of insanity — insufficient evidence**

Defendant's evidence of prior mental hospitalization in Cuba some years before the offenses in question, his suicide attempts while in jail awaiting trial, and the improvement of his mental condition when prescribed an anti-psychotic medication was insufficient to raise an issue of whether defendant, at the time of the offenses charged, knew the nature and quality of his acts or that his acts were wrong so as to require the trial court to instruct on the defense of insanity. Rather, such evidence, when considered with evidence of defendant's intoxication and his actions at the time of the offenses, required only an instruction concerning the effect of his intoxication on the issue of specific intent.

5. **Criminal Law § 138— mitigating factors in sentencing—intoxication as mental condition reducing culpability—failure to find intoxication as physical impairment**

    In a sentencing hearing for larceny in which the court found as a mitigating factor that defendant's intoxication was a mental condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense, G.S. 15A-1340.4(a)(2)d, the trial court did not err in failing also to find as a mitigating factor that defendant's intoxication was a physical condition that significantly reduced his culpability for the offense where defendant failed to establish any link between his physical impairment and his culpability for larceny.

6. **Criminal Law § 138— mitigating factors—intoxication not limited mental capacity**

    Intoxication does not support a finding of the mitigating factor set forth in G.S. 15A-1340.4(a)(2)e that defendant's "limited mental capacity at the time of commission of the offense significantly reduced his culpability for the offense."

APPEAL by defendant from *Seay, Judge*. Judgment entered 1 February 1984 in Superior Court, FORSYTH County. Heard in the Court of Appeals 12 February 1985.

Defendant was arrested on 7 September 1983 and charged with robbery with a dangerous weapon and assault with a deadly weapon upon a law enforcement officer as well as several related misdemeanor motor vehicle offenses. He was found to be indigent and counsel was appointed for him. When the case was called for trial in Superior Court, the State elected to proceed only on the felony charges. During jury deliberations, defendant entered a plea of guilty to simple assault, which was accepted by the court in the felonious assault case. In this case, in which defendant was charged with robbery with a dangerous weapon, he was found guilty of larceny from the person. The trial court found one aggravating factor, one mitigating factor, and found that the factor in aggravation outweighed that in mitigation. An active sentence of ten years was imposed. Defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General George W. Lennon, for the State.*

*Jenkins, Lucas, Babb and Rabil, by S. Mark Rabil, for defendant appellant.*

MARTIN, Judge.

By this appeal, defendant raises assignments of error relating to the denial of his pre-trial motion for additional psychiatric evaluation, the trial court's determination that he was competent to proceed to trial, the admission of testimony by the State's psychiatric expert, the refusal of the trial court to submit to the jury the issue of defendant's insanity and to the sentence imposed. We find no prejudicial error in any aspect of the defendant's trial and affirm his conviction.

In summary, the State's evidence showed that at approximately 3:30 a.m. on 7 September 1983, William Peterson, Jr., a taxi driver for Blue Bird Cab Company, answered a call at the Black Velvet Lounge, a nightclub in Winston-Salem. The defendant and another man approached the cab; the defendant entered the back seat and the other man sat in the front seat. The front-seat passenger pointed directions to Peterson. When Peterson arrived at the address pointed out by that person, he stopped the cab and turned the interior light on, waiting to be paid. The passenger said "look out" and Peterson turned to see the defendant striking at him with a knife. Peterson jumped out of the cab on the driver's side and the front-seat passenger jumped out the opposite side. The cab began rolling forward and the defendant climbed over the seat, got under the steering wheel and drove away. The defendant was located by police officers who attempted to stop him; however, the defendant drove around one police car and subsequently ran the taxicab into the side of another police car and then struck a bridge abutment. The defendant was injured in the collision. In the opinion of the officers, the defendant was impaired by alcohol.

Defendant testified that he had been in the United States for three years. Before coming to the United States he had been imprisoned in Cuba for refusing military service and refusing to work. He testified that he had also been hospitalized in a mental hospital after attempting suicide following the deaths of his mother and sister. On the evening before this incident, the defendant had been drinking with his friend for several hours at the lounge where Peterson picked them up. When they arrived at defendant's apartment, defendant testified that his friend pulled a knife and defendant grabbed the knife from him. When the driver

and defendant's friend jumped out of the cab, defendant became scared and left with the taxi. He remembers very little, other than crashing into the police car, until waking the next day at the hospital. He testified that he attempted, while in jail, to commit suicide by swallowing aspirin, pins, and paint scraped from his cell because he was depressed. Defendant also offered the testimony of the physician who treated defendant for the injuries sustained in the collision. The physician testified that in his opinion the defendant was intoxicated when he was brought to the hospital and that he was uncooperative during the course of his hospitalization.

In rebuttal, the State offered the testimony of Dr. Rollins who testified that in his opinion the defendant was not suffering from a mental disorder which would render him incapable of distinguishing between right and wrong or of understanding the nature and quality of his act.

[1]　Defendant first assigns error to the trial court's denial of his motion for the appointment, at state expense, of a psychiatrist fluent in both the Spanish and English languages to evaluate him as to his capacity to proceed to trial and as to his criminal responsibility at the time of the alleged offenses. The defendant is Cuban and is fluent only in Spanish. He bases his argument upon constitutional and statutory grounds.

Defendant moved, on 14 November 1983, for a mental examination by a psychiatrist, fluent in Spanish and English, to determine his capacity at the time of the alleged offenses, anticipatory to an insanity defense. Pursuant to an order entered by Judge James M. Long, defendant was committed to Dorothea Dix Hospital where he was examined by Dr. Russell G. Brown, a forensic psychiatrist. Dr. Brown is not fluent in Spanish, but arranged for the defendant to be interviewed by a Spanish-speaking physician, Dr. Saldras, and by a Spanish-speaking psychiatrist, Dr. Lara. He also interviewed the defendant but was hindered by the language barrier. Based upon the interviews, observations and other information obtained from various sources, Dr. Brown rendered his opinion that the defendant had an "adequate understanding of the charges . . . and the seriousness of the charges," was able to cooperate with his attorney, "could distinguish between right and wrong at the time of the alleged crime," and was

not psychotic at the time of the hospitalization or at the time of the offenses. Dr. Brown noted that an accurate assessment of the defendant was not possible because of the language barrier.

Because of the difficulty noted by Dr. Brown, Judge Cornelius entered an order on 15 December 1983 providing that the defendant be recommitted to Dorothea Dix Hospital for further evaluation by a psychiatrist fluent in Spanish and English. At the time of this admission, the defendant was interviewed in Spanish by Dr. Lara; however, Dr. Bob Rollins, a forensic psychiatrist, evaluated the defendant. Dr. Rollins, who is not fluent in Spanish, testified that he had a conversation with the defendant but relied mainly on Dr. Lara for detailed conversations with defendant. After observing defendant and conferring with Dr. Lara, Dr. Rollins rendered an opinion that defendant did not have a mental disorder that would render him incapable of proceeding to trial or not responsible for his actions.

Subsequently, on 30 December 1983, defendant gave notice that he intended to raise the defense of insanity and to introduce expert testimony relating to insanity. He moved for the appointment of an additional psychiatrist. This motion was denied by Judge DeRamus on 3 January 1984 and by Judge Seay shortly before the defendant's trial.

The North Carolina Supreme Court has said that there is no violation of an indigent defendant's constitutional rights to due process or equal protection by the trial court's refusal to appoint an additional psychiatric expert where the State has provided competent psychiatric assistance. *State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980); *State v. Patterson*, 288 N.C. 553, 220 S.E. 2d 600 (1975), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1211, 96 S.Ct. 3211 (1976). The statutory right of an indigent criminal defendant to expert assistance is based upon G.S. 7A-450(b) which requires the State to provide an indigent defendant "with counsel and the other necessary expenses of representation." Our Supreme Court has interpreted that statutory provision for "other necessary expenses of representation" to require expert assistance "only upon a showing by defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help it is probable that defendant will not receive a fair trial." *State v.*

*Gray*, 292 N.C. 270, 278, 233 S.E. 2d 905, 911 (1977). The decision as to whether such a showing is made depends upon the circumstances of each case, is within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion. *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976).

We conclude that the defendant in the case *sub judice* has failed to demonstrate that the appointment of an additional psychiatrist would have materially assisted him, or that he was denied a fair trial by the refusal of the court to grant his request. Defendant has shown only that the examination by Dr. Brown was hindered by the language barrier, but he has failed to point out any information which could have been made available to a Spanish-speaking psychiatrist which was not made available to Dr. Brown or to Dr. Rollins at the time of their respective evaluations. He has not challenged the competence of either psychiatrist except to the extent that they are not bilingual. Thus, his contention "that there may have been a completely different evaluation" as to his capacity and responsibility had his motion for additional psychiatric evaluation been allowed amounts to no more than speculation, much less than a reasonable likelihood. Consequently, we hold that the trial court did not abuse its discretion nor violate any of the defendant's constitutional or statutory rights in denying his motion for appointment of an additional psychiatrist.

[2] Defendant also assigns as error the trial court's determination that he was competent to proceed to trial. He contends that no such determination should have been made without his having been evaluated by a private Spanish-speaking psychiatrist. We have already ruled that his motion for such an evaluation was properly denied.

The test of a defendant's mental capacity to proceed to trial is "whether he has, at the time of trial, the mental capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed." *State v. Cooper*, 286 N.C. 549, 565, 213 S.E. 2d 305, 316 (1975). When the trial judge determines the issue of a defendant's capacity to proceed, his findings of fact, if supported by competent evidence, are conclusive on appeal. *State v. McCoy*, 303 N.C. 1, 277 S.E. 2d 515 (1981); *State v.*

*Willard*, 292 N.C. 567, 234 S.E. 2d 587 (1977). The defendant has the burden of persuasion that he is without capacity to proceed. *State v. Jacobs*, 51 N.C. App. 324, 276 S.E. 2d 482 (1981).

At the hearing conducted to determine defendant's capacity to proceed, the State relied upon the evaluations of Dr. Brown and Dr. Rollins. The defendant testified in his own behalf and offered the testimony of a jailer tending to show that defendant had swallowed pins or staples and eaten paint while incarcerated pending trial. The defendant's own testimony concerned his imprisonment in Cuba for refusing military service and for refusing to work, his mental hospitalization in Cuba following the deaths of his mother and sister, the circumstances of his coming to the United States, his injuries sustained at the time of his arrest and his apparent suicide attempts while in jail awaiting trial. This testimony bore little relationship to his mental capacity at the time of trial. However, on cross-examination defendant testified that he understood the charges against him and was able to talk with his attorney. The trial court found that "defendant has an adequate understanding of the charges against him and is able to assist in the legal process and cooperate with his attorney." These findings were sufficiently supported by the evidence and are, therefore, conclusive on appeal. The assignment of error relating to defendant's mental capacity to stand trial is overruled.

[3] Defendant's next assignments of error deal with the admission of certain opinion testimony given by Dr. Rollins. Dr. Rollins was permitted to testify over objection, that in his opinion the defendant, on the date of the offenses, "did not have a mental disorder that would keep him from understanding the nature and quality of his act or of distinguishing between right and wrong. I did believe he was intoxicated to a considerable degree." This degree of intoxication, however, did not negate defendant's ability to form any specific intent in Dr. Rollins' opinion. As to defendant's alleged suicide attempts Dr. Rollins opined: ". . . I thought his suicide gestures were in response to the stress of the situation that he found himself in. I did not consider that he was making a serious suicide attempt." He also thought defendant had "exaggerated" his presentation of himself as being mentally ill in order to avoid prosecution.

Defendant argues that these opinions were inadmissible because they were "legal conclusions" and were invasive of the province of the jury. This argument is without merit. Defendant stipulated, and the court ruled, that Dr. Rollins was an expert medical witness in the field of forensic psychiatry. He testified that he based his opinions upon his own conversations with, and observations of, defendant, as well as conversations conducted by Dr. Lara and the results of the initial evaluation by Dr. Brown. The principle is well established that a psychiatrist may testify as to his opinion of a defendant's mental capacity based upon his personal observations and examinations of the defendant as well as upon observations and tests performed and recorded by others. *State v. DeGregory*, 285 N.C. 122, 203 S.E. 2d 794 (1974); *see* Brandis on North Carolina Evidence, § 135. This principle renders admissible, as well, an opinion as to whether or not a defendant is pretending insanity to avoid prosecution. *State v. Pritchett*, 106 N.C. 667, 11 S.E. 357 (1890).

[4] Prior to trial, defendant filed a timely notice of his intention to rely upon the defense of insanity. At the close of the evidence the trial court denied the defendant's request that the jury be instructed on the issue of insanity. A request for instruction on the effect of defendant's voluntary intoxication was granted. Defendant assigns error to the refusal of the court to submit the issue of insanity. We find the assignment to be without merit because there was no evidence presented which would have required an instruction on the defense of insanity.

In North Carolina, the test of insanity as a defense to a criminal prosecution is

whether defendant, at the time of the alleged act, was laboring under such a defect of reason, from disease or deficiency of mind, as to be incapable of knowing the nature and quality of his act, or if he does know this, was by reason of such a defect of reason incapable of distinguishing between right and wrong in relation to such act.

*State v. Vickers*, 306 N.C. 90, 94, 291 S.E. 2d 599, 603 (1982). Every person is presumed to be sane and possess a sufficient degree of reason to be responsible for his crimes. *State v. Hicks*, 269 N.C. 762, 153 S.E. 2d 488 (1967). In the absence of evidence to rebut this presumption, there is no requirement that the trial

judge place the issue of insanity before the jury. *State v. Jones*, 293 N.C. 413, 238 S.E. 2d 482 (1977). The burden is on the defendant to prove the defense of insanity to the satisfaction of the jury. *State v. Caldwell*, 293 N.C. 336, 237 S.E. 2d 742 (1977), *cert. denied*, 434 U.S. 1075, 55 L.Ed. 2d 780, 98 S.Ct. 1264 (1978).

Defendant presented no evidence that he did not know the nature and quality of his acts at the time of the offenses. His evidence of prior mental hospitalization in Cuba some years before these offenses, his suicide attempts and the improvement of his mental condition when prescribed an anti-psychotic medication were insufficient to raise the issue of whether or not he knew, on 7 September 1983, the nature and quality of his act or that his act was wrong. *See State v. Corley*, 310 N.C. 40, 311 S.E. 2d 540 (1984). This evidence, when considered together with the evidence of his intoxication and his actions at the time of the offenses, justified no more than an instruction concerning the effect of his intoxication on the issue of specific intent. *Id*. Such an instruction was given.

[5] The defendant's final assignment of error relates to the sentencing phase of his trial. The trial court found as a factor in aggravation that the defendant had previously been convicted of criminal offenses punishable by more than sixty days confinement, and found in mitigation that the defendant "was suffering from a mental condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense." The court also found that the factor in aggravation outweighed that in mitigation and sentenced the defendant to the maximum sentence allowed by law for the Class H felony of larceny from the person. The defendant contends that because the evidence showed that he was intoxicated at the time of the offense, the court should have found as a separate mitigating factor that he "was suffering from a *physical* condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense." We disagree.

Intoxication is not enumerated as a separate mitigating factor under the provisions of G.S. 15A-1340.4(a)(2). However, we have held that intoxication of a defendant may be appropriately considered in mitigation under the statutory mitigating factor contained in G.S. 15A-1340.4(a)(2)d: "The defendant was suffering

from a mental or physical condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense." *State v. Potts*, 65 N.C. App. 101, 308 S.E. 2d 754 (1983), *disc. rev. denied*, 311 N.C. 406, 319 S.E. 2d 278 (1984).

Alcohol intoxication, or drunkenness, exists when there is a material impairment of mental or physical faculties, or both, induced by excessive consumption of alcohol. *See* Black's Law Dictionary, Fifth Edition (1979). Thus, intoxication may constitute a mental condition or a physical condition. The mitigating effect, if any, of intoxication upon an offender's culpability will depend upon the circumstances of each case.

In the case *sub judice*, defendant relied upon the defense of intoxication to negate the element of intent essential to conviction of the offense. Intent is a mental emotion or attitude. *State v. Arnold*, 264 N.C. 348, 141 S.E. 2d 473 (1965). The jury determined the impairment of the defendant's mental faculties by alcohol insufficient to constitute a defense to the element of intent. However, as is evidenced by the finding in mitigation, the court considered the intoxication as a mental condition reducing defendant's culpability.

To the extent that defendant's physical faculties were also impaired by excessive consumption of alcohol, constituting the physical condition of intoxication, defendant has failed to establish any link between his physical impairment and his culpability for stealing the taxi. The burden of proving that the condition reduced his culpability for the offense is upon defendant. *State v. Jones*, 309 N.C. 214, 306 S.E. 2d 451 (1983). Evidence that the condition exists, without more, does not mandate its consideration as a mitigating factor. *State v. Salters*, 65 N.C. App. 31, 308 S.E. 2d 512 (1983), *disc. rev. denied*, 310 N.C. 479, 312 S.E. 2d 889 (1984). Thus, we hold that the trial judge was not required to consider the physical condition of intoxication as a mitigating factor in this case.

[6] In his brief, defendant contends that his intoxication gave rise to the additional mitigating factor set forth in G.S. 15A-1340.4(a)(2)e: "The defendant's immaturity or his limited mental capacity at the time of commission of the offense significantly reduced his culpability for the offense." The defendant did not take exception to, nor assign as error, the court's failure to make

---

---

this finding; thus he has failed to properly present this issue on appeal. N.C. Rules of Appellate Procedure, Rule 10(a). Nevertheless, we consider the argument and hold that intoxication does not support a finding of this mitigating factor. *See State v. Potts, supra.*

For the reasons stated, we hold that the defendant received a fair trial and sentencing hearing free from prejudicial error.

No error.

Judges WEBB and PHILLIPS concur.