STATE OF NORTH CAROLINA v. CALVIN BROWN

No. 358A84

(Filed 5 November 1985)

### 1. Criminal Law § 138.21 — aggravating factor — especially heinous, atrocious or cruel — evidence sufficient

There was sufficient evidence in a prosecution for second degree murder to find as an aggravating factor that the offense was especially heinous, atrocious or cruel where defendant led his unsuspecting victim into a room in which he was surprised by defendant's codefendant brandishing a gun, defendant and the codefendant constrained the victim to plead for his life while they held the gun on him, bound his legs and arms together with strips of electric cord and tied them to a bedpost, forced a towel down his throat and secured it with a scarf wound around his mouth and nose, rummaged through his pockets and robbed him, carted him to a basement and dumped him there, the defendant's medical expert stated that the victim suffered pain, experienced fear and was traumatized for up to an hour, and an autopsy showed that the victim died of asphyxiation. G.S. 15A-1340.4(a)(1)f.

### 2. Criminal Law § 138.28 — aggravating factor — prior conviction — nolo contendere — no error

The trial court did not err when sentencing defendant for second degree murder by finding as an aggravating factor that defendant had a prior conviction for a crime punishable by imprisonment for more than sixty days where defendant had pleaded nolo contendere to a charge of failure to provide child support. The definitional section of the Fair Sentencing Act makes a plea of no contest a prior conviction for purposes of sentencing. G.S. 15A-1340.2(4), G.S. 15A-1340.4(a)(1)o.

### 3. Criminal Law § 138.40 — second degree murder — confession after arrest — finding of mitigating factor not precluded

The trial court was not precluded by *State v. Graham*, 309 N.C. 587 from finding as a mitigating factor that defendant had voluntarily acknowledged wrongdoing when his confession came after his arrest for murder. Because defendant acknowledged wrongdoing after he was arrested, he had no claim as of right to this mitigating factor; but the confession was not so tardy as to preclude consideration of it as an early acknowledgment of wrongdoing.

### 4. Criminal Law § 138.40 — homicide — mitigating factor — acknowledgment of wrongdoing — failure to find no abuse of discretion

The trial court did not abuse its discretion when sentencing defendant for second degree murder by refusing to find as a mitigating factor that defendant had voluntarily acknowledged wrongdoing in an early stage of the proceeding where officers extracted defendant's statement only after substantial time and effort and repeated refusals on the part of defendant to admit wrongdoing in connection with the offense. One purpose of the mitigating factor is to allow a sentencing judge to give some credit to a defendant who by early confessions spares law enforcement officers expense and trouble which might otherwise be

required, and another purpose is to allow a sentencing judge to recognize that the earlier one admits responsibility, the better one's chance of rehabilitation.

**5. Criminal Law § 138.33— mitigating factor—passive participant—abuse of discretion in not finding**

The trial court did not abuse its discretion when sentencing defendant for second degree murder by refusing to find as a mitigating factor that defendant was a passive participant in the offense where defendant, as a part of a prearranged plan, lured the victim into a bedroom; helped bind, gag and rob him; helped dispose of his body; and each codefendant implied that he was absent from the room when the victim was murdered. G.S. 15A-1340.4(a)(2)c.

**6. Criminal Law § 138.41— mitigating factor—good character or reputation in the community—evidence insufficient**

The uncontradicted evidence of a defendant convicted of second degree murder did not compel a finding of the mitigating factor that he was a person of good character or reputation in the community where his evidence was that he was a high school student of good standing, and the mother of his child testified that she had known defendant since he was twelve, that she and defendant remained good friends, that she had never known defendant to be violent or mean around her, and that he was a nice guy.

**7. Criminal Law § 138.13— sentencing hearing—attitude of judge**

The trial judge's questioning of defendant's expert witness during a sentencing hearing for second degree murder did not indicate a failure to maintain an impartial attitude where the questions of the judge were directed toward matters relevant to the issue of sentencing but which were not rendered altogether clear by the testimony, including whether the defendant battered the victim or caused him to suffer pain at or before his death. The inquiry was for the purpose of insuring the judge that he carried out his responsibility for imposing an appropriate sentence.

Justice BILLINGS did not participate in the consideration or decision of this case.

APPEAL by defendant pursuant to N.C. Gen. Stat. § 7A-27(a) from a sentence of life imprisonment imposed by *Seay, J.,* at the 19 January 1984 Criminal Session of FORSYTH Superior Court upon defendant's plea of guilty to second degree murder. Defendant's motion to bypass the Court of Appeals on a consecutive two-year sentence upon a guilty plea to possessing stolen property allowed on 10 July 1984.

*Rufus L. Edmisten, Attorney General, by Henry T. Rosser, Assistant Attorney General, for the state.*

*E. Vernon F. Glenn, Attorney for defendant appellant.*

EXUM, Justice.

This appeal arises under the Fair Sentencing Act, N.C. Gen. Stat. § 15A-1340.4 (1983). Defendant contends the sentencing judge erred in finding as aggravating factors during sentencing: (1) The offense was especially heinous, atrocious or cruel, G.S. 15A-1340.4(a)(1)f; and (2) Defendant had a prior conviction for an offense punishable by more than sixty days' imprisonment, *id.* at (a)(1)o. Defendant also contends the judge erred in failing to find as factors in mitigation of his offenses that defendant (1) voluntarily acknowledged wrongdoing in connection with the offense at an early stage of the criminal process, *id.* at (a)(2)l; (2) was a passive participant or played a minor role in the commission of the offense, *id.* at (a)(2)c; (3) has been a person of good character or good reputation in the community in which he lives, *id.* at (a)(2)m. He contends finally the judge failed to maintain an impartial attitude during the sentencing hearing.

## I.

The following evidence was presented at the sentencing hearing. On or about 28 February 1983 defendant lured the victim, David Shelton, to codefendant Willie Lilly's home and into a bedroom. Defendant and Shelton were alone for a few minutes. Lilly then entered with a pistol and pointed it at Shelton who began pleading for his life. Defendant and Lilly forced Shelton's arms and legs together and tied them to a bedpost. They stuffed a towel into his mouth, secured it with a scarf knotted at the back of his head and robbed him. Defendant and Lilly wrapped the victim in two blankets, put him in a grocery cart, and wheeled him to the basement of the house. There they stood him on his head, with his face against the dirt floor, and his legs propped up against the wall.

Defendant and Lilly next went to Shelton's residence and stole some of his personal property. Later that day Lilly was stopped driving Shelton's automobile and arrested for driving without a valid license. Because Shelton had been reported missing since February 25, the police questioned Lilly about his disappearance. He told them that Shelton had last been seen with defendant. The police were unable to locate defendant for questioning at that time, but two weeks later defendant and Lilly were arrested driving a stolen vehicle. When questioned, defend-

ant initially denied knowing anything about Shelton, but after hearing that the police had been told that he was one of the last persons to be seen with the victim, he made a statement.

Acting on defendant's statement, the police obtained a search warrant and found the victim's body in the basement of Lilly's home. An autopsy showed that although there was evidence of blows to the victim's head, he died of asphyxiation caused by either suffocation or strangulation.

In the opinion of defendant's medical expert, a physician, suffocation provided a plausible explanation for the victim's death. Although there were hemorrhages about the neck, other evidence of external pressure to the neck was lacking. He also stated that since the body was found in a feet-up, head-down position, the hemorrhages about the neck could have been caused by blood settling toward the lowest part of the body after death, rather than by strangulation. He could not say for certain, however, whether he was strangled or merely suffocated. Defendant's expert also could not determine when or in what manner the blows to the victim's head were inflicted. In his opinion they could have been inflicted any time before or after death, during the robbery, the ride to the basement or when the victim was left on the floor there. He testified the victim suffered no great physical outrage before he died. Responding to questions by the sentencing judge, the doctor testified that Shelton had "obviously experienced physical pain" and "was in a state of fear and . . . traumatized . . . for at least a half an hour to perhaps an hour." He could not say whether death came before the victim was moved to the basement, or whether the towel and scarf completely blocked the victim's nose and mouth.

Defendant also introduced character evidence through the mother of his child. She testified that she thought defendant was a nice person and that she had never known him to be violent or mean. She also testified that they had remained friends despite her having filed an action of nonsupport against him. She did not, however, testify to defendant's reputation in the community in which he lived. Defendant also offered evidence that he was a student in good standing in his junior year in high school.

The state introduced evidence at the sentencing hearing that defendant had pled *nolo contendere* to the charge of nonsup-

port—an offense punishable by a sentence of no more than six months' confinement.

On the basis of this evidence the sentencing judge found as aggravating factors that the murder was especially heinous, atrocious, or cruel, G.S. 15A-1340.4(a)(1)f, and that defendant had a prior conviction, G.S. 15A-1340.4(a)(1)o. Finding no mitigating factors, he increased defendant's sentence for second degree murder beyond the presumptive term of fifteen years to life imprisonment.

## II.

The Fair Sentencing Act sets forth presumptive prison terms for certain felonies. A judge may vary a sentence from the presumptive term if he makes appropriate findings of aggravating or mitigating factors. G.S. § 15A-1340.4. Defendant raises several assignments of error with respect to findings by the sentencing court of factors in aggravation and its failure to find factors in mitigation.

## A.

[1] Defendant first argues the trial judge erred in finding as an aggravating factor that the offense was especially heinous, atrocious or cruel. G.S. 15A-1340.4(a)(1)f. Defendant contends the evidence was insufficient to support such a finding.

In determining whether an offense is especially heinous, atrocious or cruel, "the focus should be on whether the facts of the case disclose excessive brutality, or physical pain, psychological suffering, or dehumanizing aspects not normally present in that offense." *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E. 2d 783, 786 (1983) (emphasis in original deleted). A factor bearing on physical and psychological suffering is the length of time between a defendant's acts of violence and the victim's death. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983).

We believe there is sufficient evidence in this case from which the sentencing judge could find that the victim suffered both psychologically and physically in a manner not normally present in second degree murders. Defendant led his unsuspecting victim into a room in which he was surprised by defendant's codefendant, Willy Lilly, brandishing a gun. Defendant and Lilly

constrained Shelton to plead for his life while they held the gun on him. They bound his arms and legs together with strips of electric cord and tied them to a bedpost. They forced a towel down his throat and secured it with a scarf wound around his mouth and nose. They rummaged through his pockets and robbed him. Then they carted him to the basement and dumped him there. It is fair to infer from these facts that the victim suffered extraordinary physical and emotional distress during this ordeal before he finally died of asphyxiation.

Defendant and Lilly stated to a police officer they thought the victim had died 15 to 20 minutes after he was tied to the bedpost and robbed. The defendant's medical expert stated the victim suffered pain, experienced fear and was traumatized for up to an hour.

We believe the foregoing constitutes sufficient evidence of both psychological and physical suffering beyond that normally present in the offense of second degree murder. Judge Seay, therefore, did not err in finding the offense to be especially heinous, atrocious or cruel.

[2] Defendant also argues that the sentencing judge erred in treating his plea of *nolo contendere* to a charge of failure to provide child support as a prior conviction for a crime punishable by imprisonment for more than 60 days and an additional aggravating factor under G.S. 15A-1340.4(a)(1)o. Defendant contends the *nolo contendere*, or a "no contest," plea usually establishes guilt only for the purpose of imposing a sentence in the case in which the plea is entered but may not be treated as a conviction for purposes of other criminal actions. The definitional section of the Fair Sentencing Act, however, makes a plea of no contest a prior conviction for purposes of sentencing. It provides "[a] person has received a prior conviction when he . . . has entered a plea of guilty or *no contest* to a criminal charge . . . ." G.S. 15A-1340.2(4) (emphasis added).

Judge Seay, therefore, did not err in finding the defendant's prior plea of *nolo contendere* as an aggravating factor for purposes of sentencing in this case.

## B.

[3]  Defendant further contends the trial court erred in not finding three mitigating factors. Defendant first claims that prior to arrest or at early stage of the criminal process, he voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer. G.S. 15A-1340.1(a)(2)l.

Defendant was arrested driving a stolen vehicle on 15 March 1983, taken to the police station, and charged with possession of that vehicle. After discussing with defendant the matter of the stolen vehicle, the police questioned him about David Shelton's disappearance. Although defendant at first denied any knowledge of Shelton's disappearance, he eventually made a statement implicating himself. On the basis of defendant's statement the police located Shelton's body. The next day a warrant for murder issued from the magistrate's office, and defendant was indicted on that offense on 5 July 1983.

The state contends that under *State v. Graham*, 309 N.C. 587, 308 S.E. 2d 311 (1983), in order for a confession to be considered as a mitigating factor, it must be made before the first of either of these events: arrest, issuance of a warrant or return of an indictment. Defendant's confession was not timely because his arrest was, of these events, the first to occur, but he did not acknowledge wrongdoing until after his arrest. The state relies upon language in *Graham* which states:

> We hold that if defendant's confession was made prior to the issuance of a warrant or information, or upon the return of a true bill of indictment or presentment, or prior to arrest, whichever comes first, he is entitled to a finding of this statutory, mitigating circumstance.

*Id.* at 590, 308 S.E. 2d 314.

The state misconstrues our language in *Graham*. As we observed in *State v. Hayes*, 314 N.C. 460, 472-73, 334 S.E. 2d 741, 748-49 (1985), *Graham* held "that a defendant was *entitled* to a finding of this statutory mitigating factor if his confession was made prior to the issuance of a warrant or information, the return of a true bill of indictment or presentment, or prior to arrest, *whichever comes first*." That a defendant's confession comes after his arrest does not automatically disqualify it as a voluntary ac-

knowledgment of wrongdoing at an early stage of the criminal process. Rather, "it [is] for the trial judge to decide, in his discretion, whether the statement was made at a sufficiently early stage of the criminal process to qualify as a mitigating factor." *Id.* Because defendant acknowledged wrongdoing after he was arrested, he had no claim as of right to this mitigating factor; but the confession was not so tardy as to preclude consideration of it as an early acknowledgment of wrongdoing.

[4] We must decide whether Judge Seay abused his discretion in failing to find defendant's statement was made at an early stage of the criminal process. A decision entrusted to a trial judge's discretion may be reversed only if it is "manifestly unsupported by reason," *White v. White*, 312 N.C. 770, 777, 324 S.E. 2d 829, 833 (1985), or so arbitrary that it could not have been a reasoned decision. *State v. Wilson*, 313 N.C. 516, 538, 330 S.E. 2d 450, 465 (1985). In deciding whether Judge Seay abused his discretion, we note that one purpose of this mitigating factor is to allow a sentencing judge to give some credit to a defendant who by early confession spares law enforcement officers expense and trouble which might otherwise be required to resolve the crime. Another purpose is to allow a sentencing judge to recognize that the earlier one admits responsibility, the better one's chance of rehabilitation.

When police questioned defendant about Shelton's disappearance, defendant "denied knowing him and anything about him." Even after he was confronted with Lilly's statement that he was one of the last people to be seen with Shelton, defendant apparently maintained his innocence. The interrogating officer testified that only "[l]ater through talking to him he gave us a confession." The police were able to obtain a search warrant which led to the discovery of Shelton's body on the basis of defendant's statement. They extracted this statement from defendant, however, only after substantial time and effort and repeated refusals on the part of defendant to admit wrongdoing in connection with the offense. The sentencing judge could have found that whatever consideration defendant earned by helping police locate Shelton's body was offset by his earlier persistent denials of wrongdoing. We cannot say that Judge Seay's failure to find defendant's statement to be an early acknowledgment of wrongdoing has no ra-

tional basis and hold he did not abuse his discretion by not finding this mitigating factor. *White v. White*, 312 N.C. 770, 778, 324 S.E. 2d 829, 833 (1985).

In rendering this holding, we nevertheless stress that judges at the sentencing level should be favorably disposed towards finding this factor in mitigation when it is supported evidentially. Early acknowledgment of wrongdoing should be strongly encouraged for the reasons noted above. Our holding here results from our reluctance in sentencing matters, which require a careful exercise of judgment on the part of the sentencing judge, to upset that judgment where some rational basis exists for it in the record.

[5] Defendant submits as a second mitigating factor that he was a passive participant in the commission of the offense. G.S. 15A-1340.4(a)(2)c. We find no error in the sentencing judge's failure to find this mitigating factor. Although defendant acknowledged robbing Shelton and helping dispose of his body, he claimed that after he and his codefendant Lilly bound and gagged Shelton, he left Lilly alone with Shelton for 15 or 20 minutes and returned to find Shelton dead. Lilly corroborated defendant's story in every respect, except that he claimed it was he, not Brown, who left the room and returned to find Shelton dead. Each defendant implied, therefore, that while he was absent from the room the other defendant murdered Shelton. In the face of such contradictory evidence, the trial judge was not compelled to find that defendant was a passive participant in the commission of the offense. It is the duty of the finder of fact, not this Court, to resolve disputed questions of fact. *Cogdill v. Highway Comm.*, 279 N.C. 313, 182 S.E. 2d 373 (1971). Defendant, moreover, as part of a prearranged plan lured Shelton into Lilly's bedroom. He helped bind, gag and rob Shelton, and then helped dispose of his body. This evidence tends to show that far from being a passive participant, defendant played a major role in the commission of the crime.

[6] Defendant's final argument is that the sentencing judge erred in not finding as a mitigating factor that defendant was a person of good character or reputation in the community in which he lives. G.S. 15A-1340.4(a)(2)n. Defendant offered as a character witness the mother of his child. She testified she had known de-

fendant since he was twelve and that she and defendant remained good friends at the time of the hearing. She also testified without contradiction that she had never known defendant to be violent or mean around her and that he "was a nice guy." This and testimony that he was a high school student of good standing was the sole evidence offered on defendant's character.

In *State v. Jones*, 309 N.C. 214, 306 S.E. 2d 451 (1983), we said:

> [W]hen a defendant argues, as in the case at bar, that the trial court erred in failing to find a mitigating factor proved by uncontradicted evidence, his position is analogous to that of a party with the burden of persuasion seeking a directed verdict. He is asking the court to conclude that 'the evidence so clearly establishes the fact in issue that no reasonable inferences as to the contrary can be drawn,' and that the credibility of evidence 'is manifest as a matter of law.'

*Id.* at 219-20, 306 S.E. 2d at 455 (citations omitted).

Defendant's character witness did not testify to defendant's reputation in the community. Her testimony related to her personal observations of defendant—that she thought him to be a nice person and never violent or mean to her. With respect to defendant's good character, we cannot say that this "evidence so clearly establishes the fact in issue that no reasonable inferences . . . to the contrary can be drawn." *Id.* In this case, as in *State v. Taylor*, 309 N.C. 570, 308 S.E. 2d 302 (1983), defendant's character witness testified, in essence, that defendant was well behaved around her. What we said in that case applies equally well here. "Good character, though, 'is something more than an absence of bad character.'" *Id.* at 577, 308 S.E. 2d at 307-08 (quoting *In re Applicants for License*, 191 N.C. 235, 238, 131 S.E. 661, 663 (1926)). Defendant's evidence does not establish the fact of his good character or reputation in his community so clearly as to compel a finding of this mitigating circumstance.

III.

[7] Defendant's final assignment of error is that the sentencing judge failed to maintain an impartial attitude throughout the sentencing hearing. In support of this argument defendant cites "the manner in which he cross-examined the expert witness during the

sentencing hearing." A trial judge may examine witnesses called by either party for the purposes of clarifying their testimony. *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976). Further, since the sentence to be imposed rests ultimately and solely with the sentencing judge, he or she should be given even wider latitude in asking relevant questions than might ordinarily be permitted during trial when deliberation of guilt is made by the jury. Our examination of the transcript reveals that the questions of the sentencing judge were directed towards matters relevant to the issue of sentencing but which were not rendered altogether clear by the testimony. These matters included whether the defendant battered the victim or caused him to suffer pain at or before his death. That Judge Seay's inquiry happened to uncover answers prejudicial to defendant does not alone demonstrate any bias on the part of Judge Seay. Judge Seay's inquiry was, instead, for the purpose of insuring himself that he carried out his responsibility for imposing an appropriate sentence. This assignment of error is overruled.

For the reasons stated above, we find in defendant's sentencing hearing

No error.

Justice BILLINGS did not participate in the consideration or decision of this case.