STATE OF NORTH CAROLINA v. EARL JACKSON BARTS

No. 370A84

(Filed 2 December 1987)

**1. Criminal Law § 23.3— guilty plea to first degree murder—knowing and voluntary**

In a prosecution arising from a robbery and murder in which defendant pled guilty, the trial court adequately explained the two theories of first degree murder under which defendant was pleading guilty, and defendant's responses indicated that he understood the nature of the plea and the possible consequences. N.C.G.S. § 15A-1022(a) and (b).

State v. Barts

**2. Criminal Law § 23.3— plea of guilty to first degree murder—evidence sufficient**

In a case arising from a robbery and murder in which defendant pled guilty, there was sufficient evidence to support a plea of guilty to premeditated and deliberate murder where the prosecutor's summary of the evidence, to which defendant stipulated, showed that defendant and an accomplice formed a plan to rob the victim, broke into the victim's house, accosted and robbed the victim, the victim died of blunt trauma consisting of multiple blows to the skull, and defendant made a statement to police admitting his involvement.

**3. Criminal Law § 73— common law rules of evidence—statements of accomplice —excludable as hearsay**

In a sentencing hearing for first degree murder held before the effective date for the Rules of Evidence, statements of an accomplice were properly excludable as hearsay where defendant made no effort to show that the declarant was unavailable to testify even though the declarant was incarcerated in the state prison system at the time of defendant's hearing, nor did defendant avail himself of the opportunity to subpoena the declarant as a witness.

**4. Constitutional Law § 28; Criminal Law § 73— first degree murder sentencing hearing—hearsay excluded—violation of due process**

The trial court erred in a sentencing hearing for first degree murder by excluding portions of a written statement and testimony which recounted an accomplice's oral confession to his role in the murder. Given the relevance of the statement, the assurances of its trustworthiness, and the greater latitude accorded in sentencing proceedings, hearsay rules must yield to due process considerations under the facts of this case.

**5. Criminal Law § 138.40— failure to find mitigating factor of voluntary acknowledgment of wrongdoing—no abuse of discretion**

The trial court did not abuse its discretion when sentencing defendant for burglary and armed robbery by failing to find the mitigating factor that defendant voluntarily acknowledged wrongdoing in connection with the offenses to a law enforcement officer at an early stage of the criminal process where defendant did not admit his participation until after he was arrested and confronted with an accomplice's statement; a detective testified that defendant volunteered the information because he got mad that an accomplice had made a statement; and, when asked on videotape if he had ever considered going to the police about the crime himself, defendant responded that sooner or later he might have admitted responsibility had he not been arrested. N.C.G.S. § 15A-1340.4(a)(2)1.

**6. Criminal Law § 138.34— failure to find alcoholism or drug addiction as mitigating factor—no abuse of discretion**

The trial judge did not abuse his discretion when sentencing defendant for burglary and robbery by failing to find that defendant's alcoholism or drug abuse lessens his culpability for the offenses where the evidence tended to show that two accomplices had explained their plan for robbing the victim; defendant had understood this plan and agreed to participate although he real-

ized that he could go back to prison; defendant attempted to disguise his identity during the crime by wearing a mask and using a false name; and defendant attempted to conceal the crime by disposing of the baseball bat and wallet and burying the stolen pistol. The trial judge could properly have concluded from this evidence that defendant's alcoholism and prolonged drug abuse did not affect his presence of mind, his ability to appreciate the nature of his own actions, or his understanding that his conduct was wrong. N.C.G.S. § 15A-1340.4(a)(2)d.

Justice MEYER dissenting.

APPEAL by defendant from judgments sentencing defendant to death on his plea of guilty of murder in the first degree and to consecutive terms of forty years, thirty years, and three years, respectively, on his pleas of guilty of robbery with a dangerous weapon, burglary in the second degree, and felonious larceny, said judgments imposed by *Hobgood (Robert H.), J.,* at the 28 May 1984 session of Superior Court, ALAMANCE County. Heard in the Supreme Court 14 October 1987.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the state.*

*Lee W. Settle and Robert E. Collins for defendant.*

MARTIN, Justice.

On 20 November 1983 the body of Richard Braxton, aged seventy-four, was discovered on the porch of his Alamance County farmhouse. His face and head were battered and covered with blood and both eyes were blackened. An autopsy performed by Dr. Robert Anthony, assistant chief medical examiner for the state, revealed that the victim had suffered at least seven forceful blows to the head which had crushed his skull and caused bone fragments to be driven into his brain. Among numerous bruises and lacerations were defensive wounds on one hand.

Based on information obtained from other suspects in the crime, the Alamance County Sheriff's Department arrested defendant on 5 December at North Carolina Memorial Hospital, where he was receiving treatment for alcohol abuse. Defendant was advised by police that his cousin Keith Barts had implicated him in the victim's death. Defendant then made an oral statement which was reduced to writing and signed. A similar statement was videotaped on 8 December.

These statements tended to show that defendant was recruited by Keith Barts and John David "Fireball" Holmes to participate in the robbery of Richard Braxton. The elderly Braxton lived alone on his Snow Camp farm and was rumored to carry large amounts of cash. On 19 November 1983, Holmes dropped defendant and Keith off near the Braxton farmhouse. The cousins had armed themselves with a small crowbar and a rubber hubcap hammer and were wearing masks and gloves. No one was at home, so Keith pried open a door. Inside they discovered a .22-caliber pistol and a sling blade, both of which they appropriated. Defendant thought he might use the sling blade to hit the victim on the arm to "get his attention" so he could push him down and let Keith take his money. After unsuccessfully searching the house for money, they went outside to look in the shed. Keith abandoned the crowbar there and defendant exchanged the sling blade for a baseball bat. They then returned to the house where they remained until they spotted headlights coming up the driveway.

Braxton drove up and noticed that the shed door had been left open. As he stepped inside to investigate, defendant ran toward him, swinging the baseball bat. Braxton picked up the discarded crowbar and hit defendant on the arm and in the face, causing him to drop the bat. Defendant, calling for Keith's aid, pushed Braxton onto the shed steps. Braxton grabbed defendant and the two were struggling when Keith arrived and began to hit Braxton with the rubber hammer and the baseball bat. When Braxton lay still, defendant unzipped the pocket of his bib overalls and took his wallet, containing about $3,200. Keith hit Braxton once more with the bat. The cousins then drove the victim's pickup truck to a bridge where they had previously arranged to meet Holmes. They abandoned the truck, disposed of the bat and wallet, and returned home to divide the cash.

Defendant pled guilty to murder in the first degree, burglary in the second degree, felonious larceny, and robbery with a dangerous weapon. After entry of his guilty pleas, a jury was empaneled pursuant to N.C.G.S. § 15A-2000(a) for purposes of determining defendant's punishment for murder in the first degree. At the sentencing proceeding, the state presented expert medical testimony and introduced defendant's statements into evidence. The state also presented expert testimony as to blood

spatter evidence which tended to contradict defendant's claim that he himself did not strike the victim.

Defendant testified on his own behalf, consistent with his prior statements. He blamed Keith for the beating and denied that he had ever intended that the victim be killed. He also presented evidence that his mother died when he was three years old, that he quit school during the eighth grade to help his father on the family farm, and that he began to abuse alcohol as early as the age of twelve. Although his heavy drinking and drug abuse kept him from holding a steady job, he did the cooking and housekeeping for his wife and two sons and did carpentry, leatherwork, and odd jobs for his neighbors. He had been hospitalized repeatedly for his drinking problem.

The jury found the following circumstances in aggravation: the defendant had previously been convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000 (e)(3); the murder was committed while defendant was engaged in the commission of armed robbery, N.C.G.S. § 15A-2000(e)(5); the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9).

The jury rejected each of twenty-one mitigating circumstances submitted. Upon unanimously finding beyond a reasonable doubt that the aggravating circumstances were sufficiently substantial to call for the imposition of the death penalty, the jury recommended that defendant be sentenced to death. Judgment of execution was entered on 7 June 1984. The judge then sentenced defendant to consecutive sentences of forty years' imprisonment for robbery with a dangerous weapon, thirty years' imprisonment for burglary in the second degree, and three years' imprisonment for felonious larceny. Defendant appealed the sentence of death to this Court as a matter of right, and his motion to bypass the Court of Appeals as to the other sentences was allowed on 13 July 1984.

[1] By his first assignment of error, defendant argues that the trial court erred in accepting his plea of guilty to murder in the first degree. A plea of guilty involves the waiver of various fundamental rights such as the privilege against self-incrimination, the right of confrontation, and the right to trial by jury. Consequently, through N.C.G.S. § 15A-1022(a) and (b), our legislature

has sought to ensure that such pleas are voluntary and the product of informed choice. *State v. Sinclair*, 301 N.C. 193, 270 S.E. 2d 418 (1980). Defendant contends (1) that he did not knowingly and voluntarily enter the plea as to both the felony murder and the premeditation and deliberation theories of murder in the first degree and (2) that there was no factual basis to support the plea as to the premeditation and deliberation theory. We disagree.

The record of defendant's plea proceeding contains the following colloquy:

THE COURT: Now, in connection with the charge of First Degree Murder, you understand that you're pleading guilty to First Degree Murder on two theories: First, on the basis of malice, premeditation, and deliberation?

THE DEFENDANT: I didn't understand it, Your Honor.

THE COURT: All right. I'll go through this for you.

The trial judge then proceeded to define the elements of premeditated and deliberate murder. He also discussed the principles of acting in concert. The colloquy continued:

THE COURT: Now, what I am saying is that the State in its proof—if it proves that you were acting in concert with Keith Barts, and if Keith Barts committed all of the acts necessary to constitute First Degree Murder with malice, premeditation, and deliberation pursuant to a common plan or purpose to commit First Degree Murder, then you equally would be guilty of First Degree Murder under that theory.

If you were present at the scene.

Now, there is another theory of First Degree Murder, and that is called Felony Murder. And I'll explain that to you at this time.

In order for the State to prove you guilty of First Degree Felony Murder, the State must prove: first, that you committed robbery of Richard Braxton; second, that while committing the robbery of Richard Braxton, that you or someone acting in concert with you beat Richard Braxton on the head; third, that this beating on the head was a proximate cause of Richard Braxton's death.

. . . .

State v. Barts

Now, do you understand that you're pleading guilty to First Degree Murder under both theories?

THE DEFENDANT: Yes, sir.

The trial judge next informed defendant that a sentencing hearing would be held and that the jury could recommend either a life term or the death penalty. Finally the judge inquired:

THE COURT: Do you now personally plead guilty to First Degree Murder under the theory of malice, premeditation, and deliberation and felony murder rule, Second Degree Burglary, Armed Robbery and Felonious Larceny?

THE DEFENDANT: Yes, sir.

THE COURT: Are you, in fact, guilty of these charges?

THE DEFENDANT: Can I say something?

THE COURT: Yes, sir.

THE DEFENDANT: I was there. Yes, I am.

We find that the trial judge adequately explained the two theories of murder in the first degree. Defendant's responses indicate that he understood the nature of the plea and the possible consequences. The record simply does not support defendant's claim that his plea was not an informed choice as to both theories.

[2] We turn now to the second part of defendant's argument on this issue. He maintains that the plea proceeding record is devoid of any evidence to support a plea of premeditated and deliberate murder and at most supports only a plea of guilt to felony murder. N.C.G.S. § 15A-1022 provides:

(c) The judge may not accept a plea of guilty or no contest without first determining that there is a factual basis for the plea. This determination may be based upon information including but not limited to:

(1) A statement of the facts by the prosecutor.
(2) A written statement of the defendant.
(3) An examination of the presentence report.
(4) Sworn testimony, which may include reliable hearsay.
(5) A statement of facts by the defense counsel.

This section does not require the trial judge to elicit evidence from each, any, or all of the enumerated sources. The trial judge may consider any information properly brought to his attention, but that which he does consider must appear in the record. *State v. Sinclair*, 301 N.C. 193, 270 S.E. 2d 418; *State v. Dickens*, 299 N.C. 76, 261 S.E. 2d 183 (1980).

Here the trial judge relied on the prosecution's summary of the evidence, to which defendant stipulated. We have examined this summary in the record and find that it provides a sufficient factual showing to support defendant's plea of guilty to premeditated murder. The summary showed that defendant and Keith Barts formed a plan to rob the victim, that they broke into the victim's house, that they both accosted and robbed the victim in the shed, that the victim died of blunt trauma consisting of multiple blows to the skull, and that defendant made a statement to police admitting his involvement.

Although the summary does not specifically allege that defendant was responsible for the actual beating, under the principles of acting in concert one who enters into a common design for a criminal purpose is deemed a party to every criminal act done by others in furtherance of such design. *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *modified on other grounds*, 408 U.S. 939, 33 L.Ed. 2d 761 (1972). Thus, any acts alleged in the summary which Keith performed in furtherance of the robbery and which tended to show premeditation and deliberation could properly be imputed to defendant.

It is well settled that premeditation and deliberation can be inferred from circumstances such as the brutality of the killing, the nature and number of the victim's wounds, and the dealing of lethal blows after the victim has already been felled. *State v. Rasor*, 319 N.C. 577, 356 S.E. 2d 328 (1987). The medical findings contained in the prosecution's summary tended to show that multiple injuries had been inflicted upon the victim in a particularly brutal and vicious beating. This provided sufficient evidence from which premeditation and deliberation could be inferred for the purposes of establishing a factual basis for defendant's plea. We therefore perceive no error in the judge's acceptance of defendant's plea of guilty to murder in the first degree.

**[3]**  Defendant next contends that the trial court improperly excluded evidence offered to explain the circumstances of his participation in the victim's death. Specifically defendant challenges the trial court's exclusion on hearsay grounds of those portions of defense witness Richard Lockemy's testimony and written statement which recounted Keith Barts' oral confession to his role in the murder. Lockemy had been involved with Keith and several others in the month-long planning stages of the Braxton robbery. His statement, handwritten and signed on 4 December 1983, details the planning of the crime and the reactions of key participants in its immediate aftermath.

On direct examination, defense counsel asked Lockemy to recount his conversation with Keith after the murder and to identify and read his written statement. Upon objections by the state, the trial judge excluded evidence of Keith's declarations.

As the state points out, defendant neglected to place in the record Lockemy's answers to the questions propounded to him on the witness stand. An exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness's testimony would have been had he been permitted to testify. *State v. Simpson*, 314 N.C. 359, 334 S.E. 2d 53 (1985). Nor did defendant place Lockemy's written statement into the record. However this Court, in its discretion pursuant to North Carolina Rule of Appellate Procedure 9(b)(5), allowed defendant's motion to amend the record on appeal so as to include the written statement. We will limit our remarks to the question of the written statement's exclusion.

The part of the statement pertinent to this appeal reads as follows:

> I didn't see Keith Barts or Fireball until Sunday, November 20, 1983 the day the old man was found dead. That Sunday around lunch time Keith Barts came into the trailer. Keith said, "I did that last night." I said, "What are you talking about?" Keith said, "I went to the old man's house and I think I killed him." I said, "God no you didn't kill him did you?" Keith Barts said that he wasn't sure but the old man was strong. Keith said that he kept beating the old man until the old man quit moving. Keith said the old man kept saying,

"Oh God you are going to kill me." Keith said he beat the old man with something rubber and a crow bar.

Because defendant's sentencing hearing concluded on 7 June 1984, and the North Carolina Rules of Evidence as they are now codified did not come into effect until 1 July 1984, we must apply the evidentiary principles developed at common law. Declarations against penal interest were traditionally inadmissible in North Carolina, *see State v. English*, 201 N.C. 295, 159 S.E. 318 (1931), until the landmark case of *State v. Haywood*, 295 N.C. 709, 249 S.E. 2d 429 (1978). In *Haywood*, this Court determined that such declarations could be admitted as hearsay exceptions under certain conditions. The first of these conditions is unavailability:

> (1) The declarant must be dead; beyond the jurisdiction of the court and the reach of its process; suffering from infirmities of body or mind which preclude his appearance as a witness either by personal presence or by deposition; or exempt by ruling of the court from testifying on the ground of self-incrimination. As a further condition of admissibility, in an appropriate case, the party offering the declaration must show that he has made a good-faith effort to secure the attendance of the declarant.

*Id.* at 730, 249 S.E. 2d at 442.

In ruling that the hearsay portions of the statement were inadmissible, the trial judge noted that "the defendant, through his attorney, has the right to subpoena any of these [declarants] to testify at this hearing. And the Court will give the defendant clerical assistance and time and opportunity to obtain any of those [declarants] to testify at this sentencing hearing." Defendant made no effort to demonstrate that declarant Keith Barts, who was incarcerated in the state prison system at the time of defendant's hearing, was unavailable to testify, nor did he avail himself of the opportunity to subpoena Keith as a witness. Under state evidentiary rules, then, the hearsay statements were properly excluded.

[4] However, our analysis does not end here. Defendant, while conceding that the challenged portions of Lockemy's statement were inadmissible under hearsay rules, raises a federal constitutional issue under the due process clause of the fourteenth amend-

ment. Evidentiary rules which would normally apply at the guilt phase of a trial do not necessarily apply with equal force at a sentencing hearing. Evidentiary flexibility is encouraged in the serious and individualized process of life or death sentencing. *State v. Pinch*, 306 N.C. 1, 19 n.9, 292 S.E. 2d 203, 219 n.9, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L.Ed. 2d 1031 (1983). The extent to which the rules of evidence may be relaxed within the dictates of due process is best resolved on a case-by-case basis. *State v. Williams*, 295 N.C. 655, 249 S.E. 2d 709 (1978). An examination of key federal precedents leads us to the conclusion that under the facts of this case defendant's right to a fair trial under the due process clause was violated by exclusion of the challenged evidence.

The Supreme Court of the United States has addressed the tension between a defendant's due process rights and the strict application of a state's evidentiary rules in *Chambers v. Mississippi*, 410 U.S. 284, 35 L.Ed. 2d 297 (1973). Defendant Chambers, on trial for the murder of a police officer, proffered the testimony of three different witnesses to whom another man, Gable McDonald, had confessed to the crime. The trial judge excluded this testimony because it constituted hearsay in violation of the state evidence code. In reversing Chambers' conviction on the grounds that exclusion of the evidence had deprived him of a trial in accord with fundamental standards of due process, the Supreme Court noted that McDonald's confessions bore persuasive assurances of trustworthiness because they were made spontaneously to close acquaintances shortly after the murder and were corroborated by some other evidence presented at trial. Under such circumstances, the Court held, "the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* at 302, 35 L.Ed. 2d at 313.

The Supreme Court later applied the *Chambers* rationale to a sentencing hearing in a case very similar to the one now before us. In *Green v. Georgia*, 442 U.S. 95, 60 L.Ed. 2d 738 (1979) (per curiam), defendant Green and codefendant Moore were tried separately for the murder of Teresa Allen, and both were convicted and sentenced to death. Evidence during the guilt phase of Green's trial tended to show that he had acted either separately or in concert with Moore in the abduction, rape, and shooting death of the victim. At his sentencing hearing, Green attempted

to introduce the testimony of Thomas Pasby, an acquaintance of Moore's, who would have testified that Moore had admitted that he alone fired the fatal shots, contrary to the state's theory that both men had participated in the shooting. The trial judge excluded the testimony because it constituted inadmissible hearsay under the state evidence code.

The Supreme Court, citing *Chambers*, held that the hearsay evidence was relevant to an important sentencing issue and that its exclusion violated due process and denied Green a fair hearing. In reaching this result, the Court relied on certain circumstances which indicated the statement's reliability:

> Moore made his statement spontaneously to a close friend. The evidence corroborating the confession was ample, and indeed sufficient to procure a conviction of Moore and a capital sentence. The statement was against interest, and there was no reason to believe that Moore had any ulterior motive in making it. Perhaps most important, the State considered the testimony sufficiently reliable to use it against Moore, and to base a sentence of death upon it.

442 U.S. at 97, 60 L.Ed. 2d at 741.

We find *Green* to be dispositive of this case. Under the criteria listed therein, Keith Barts' declarations bore suitable indicia of reliability under a due process standard. The declarations were decidedly against penal interest and were made spontaneously to his friend Lockemy shortly after the crime had occurred. Significantly, the state relied upon Lockemy's testimony as to the declarations at Keith's capital trial to support its theory that Keith alone had beaten the victim. *See State v. Barts*, 316 N.C. 666, 343 S.E. 2d 828 (1986). Here, moreover, Lockemy was on the witness stand and subject to cross-examination by the state.

As in *Green*, the excluded evidence was highly relevant to the issue of punishment. Defendant, while admitting some level of participation in the crime, sought to establish that he had not personally administered the fatal beating and therefore was not deserving of the death penalty for his part in the victim's demise. The state, on the other hand, presented some physical evidence tending to contradict defendant's version of events and argued in closing that defendant had been the sole perpetrator of the mur-

derous deeds. Keith's description of how he beat the victim, lacking any mention of defendant's participation, would have tended to corroborate defendant's story. The evidence might have been sufficient to tip the scales in favor of life imprisonment in the jury's assessment of the appropriate punishment.

Given the relevance of Lockemy's statement, the assurances of its trustworthiness, and the greater latitude to be afforded in sentencing proceedings, we hold that exclusion of the Lockemy statement deprived defendant of a fair sentencing hearing. Under the facts of this case our hearsay rules must yield to due process considerations. Defendant is entitled to a new sentencing hearing on the murder conviction. Because we award defendant a new hearing, we need not address his remaining assignments of error as to the death sentence.

We turn now to defendant's assignments of error with respect to noncapital sentencing. The trial judge found two factors in aggravation and no factors in mitigation on the burglary and armed robbery charges. He consequently imposed sentences exceeding the presumptive terms for both of these offenses.[1] Defendant maintains that the judge abused his discretion by failing to find certain mitigating factors which defendant claims were supported by the evidence.

[5] Specifically, defendant argues that the evidence was uncontroverted as to the statutory mitigating factor that he voluntarily acknowledged wrongdoing in connection with the offenses to a law enforcement officer at an early stage of the criminal process, N.C.G.S. § 15A-1340.4(a)(2)(l). A defendant is entitled to a finding of this statutory mitigating factor if his confession is made prior to the issuance of a warrant or information, the return of a true bill of indictment or presentment, or prior to arrest, whichever comes first. *State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 471 (1985).

The record shows that defendant did not admit to his participation in the crimes until 5 December 1983, *after* he was arrested and confronted with Keith Barts' statement to police implicating him in the beating of the victim. We have declined to establish a per se rule as to the length of time which may elapse

---

1. Defendant was sentenced to the presumptive term of three years on the charge of felonious larceny. He does not challenge this sentence.

between arrest and confession and still allow an accused the benefit of the mitigating factor. *Id.* The existence of the mitigating factor was to be determined in the discretion of the trial judge. A matter committed to the discretion of a trial court is not subject to review except upon a showing of an abuse of discretion, *Highway Commission v. Hemphill,* 269 N.C. 535, 153 S.E. 2d 22 (1967), and a trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision, *State v. Wilson,* 313 N.C. 516, 330 S.E. 2d 450 (1985).

One purpose of the mitigating factor is to allow a sentencing judge to give some credit to a defendant who by early confession spares law enforcement officers expense and trouble which might otherwise be required to resolve the crime. Another purpose is to allow a sentencing judge to recognize that the earlier one admits responsibility, the better one's chance of rehabilitation. *State v. Brown,* 314 N.C. 588, 336 S.E. 2d 388 (1985). Here the trial judge heard evidence as to the circumstances of defendant's confession which could reasonably have led him to the conclusion that the mitigating factor should not be found in this case. According to the testimony of Detective Alan Cates, defendant volunteered the information because "he got mad when we advised him that Keith had made a statement. And at that time, he seemed, appeared to be mad at Keith Barts and made a statement to us then." In the videotape of defendant's statement he was asked if he had ever considered going to the police about the crime himself. He responded that "sooner or later" he might have contacted the authorities. From this evidence it may reasonably be inferred that defendant would not have admitted responsibility had he not been arrested and confronted with the statement of another participant in the crime. Under the circumstances, we cannot say that the trial judge abused his discretion in failing to find the mitigating factor.

[6] Defendant also argues, and the state concedes, that the evidence was uncontroverted as to his prolonged abuse of drugs and alcohol. Alcoholism or drug addiction, while not itself a statutorily enumerated mitigating factor, may properly be found to mitigate an offense under the rubric of the statutory factor contained in N.C.G.S. § 15A-1340.4(a)(2)(d): "The defendant was suffering from a mental or physical condition that was insufficient

to constitute a defense but significantly reduced his culpability for the offense." *State v. Ragland*, 80 N.C. App. 496, 342 S.E. 2d 532 (1986); *State v. Bynum*, 65 N.C. App. 813, 310 S.E. 2d 388, *disc. rev. denied*, 311 N.C. 404, 319 S.E. 2d 275 (1984). The burden of proving that the condition reduced his culpability is upon defendant. *State v. Jones*, 309 N.C. 214, 306 S.E. 2d 451 (1983); *State v. Barranco*, 73 N.C. App. 502, 326 S.E. 2d 903, *cert. denied & appeal dismissed*, 314 N.C. 118, 332 S.E. 2d 484 (1985).

Here the evidence tended to show that Keith Barts and Fireball Holmes had explained their plan for robbing the victim, that defendant understood this plan and agreed to participate although he realized he could go back to prison, that defendant attempted to disguise his identity during the crime by wearing a mask and using a false name, and that defendant attempted to conceal the crime by disposing of the baseball bat and wallet and by burying the stolen pistol. From this evidence the trial judge could properly conclude that defendant's alcoholism and prolonged drug abuse did not affect his presence of mind, his ability to appreciate the nature of his own actions, or his understanding that his conduct was wrong. Under the circumstances we cannot say that the trial judge abused his discretion in failing to find that defendant's alcoholism or drug abuse lessened his culpability for the offenses. Defendant has failed to show error in the sentencing hearing on the robbery and burglary charges.

The result is:

83CRS16651 — murder — death sentence vacated, remanded to Superior Court, Alamance County, for new sentencing hearing.

83CRS16652 — burglary in the second degree — no error.

83CRS16653 — larceny — no error.

83CRS16654 — armed robbery — no error.

Justice MEYER dissenting.

The defendant did not preserve for the record what the witness Lockemy's proffered verbal testimony as to Keith Barts' statements to him would have been had he been allowed to testify

concerning those statements. For this reason, the majority correctly concludes that we cannot sustain an exception to the exclusion of the proffered verbal hearsay testimony of Lockemy. *State v. Haywood*, 295 N.C. 709, 249 S.E. 2d 429 (1978).

I believe the majority errs, however, in concluding that the defendant's due process rights were violated by the exclusion of the written statement of what Lockemy had said that Keith Barts had said to him. The majority's reliance on *Chambers v. Mississippi*, 410 U.S. 284, 35 L.Ed. 2d 297 (1973), is misplaced. In *Chambers*, the defendant, in the guilt phase, proffered the live testimony of three witnesses to whom another man had confessed to the crime with which the defendant was charged. The trial judge excluded the live testimony as hearsay in violation of the state's evidentiary code which prohibited a party from impeaching his own witness. The United States Supreme Court properly reversed the conviction because the state's evidentiary rule impinged upon the defendant's right to a fair trial. Had the live testimony of the three witnesses in *Chambers* been admitted, those witnesses would have been subject to cross-examination to test the veracity of their statements concerning the confession made to them by the third party.

Likewise, in *Green v. Georgia*, 242 U.S. 95, 60 L.Ed. 2d 738 (1979) (a per curiam opinion), upon which the majority also relies and, indeed, finds dispositive of this case, the proffered evidence was also live testimony as opposed to a written statement. In *Green*, as in *Chambers*, the live witnesses would have been subject to cross-examination to test their veracity.

In the case at bar, defense counsel attempted to have Lockemy testify as to the written statement in question, but the trial judge sustained the State's objection on the grounds that the written statement (like the proffered oral statements of Lockemy) was hearsay. The trial judge so severely sanitized the statement that defense counsel apparently felt that its introduction would have accomplished nothing. Because Lockemy was on the stand, I would have no difficulty with the result reached in this particular case if the majority opinion required the trial judge to allow the State to cross-examine him concerning the written hearsay statement. The majority does not so restrict its holding. On retrial, this same statement might be offered through Lockemy without

the trial judge permitting Lockemy to be cross-examined concerning the statement. Likewise, under the majority opinion, Lockemy's written statement might be admitted through the auspices of the officer obtaining it without Lockemy being cross-examined or without Lockemy even being present though otherwise available to testify.

So long as the witness who gives the written statement containing the hearsay is subject to cross-examination, the interests of justice are properly served. Upon cross-examination, the witness who gives (or gave) the statement containing the hearsay may very well repudiate the proffered statement as untrue or even deny having made it. If the witness gives the hearsay statement or testifies precisely to the contents of a prior written hearsay statement, his demeanor may convince a sentencing judge (or the jury in a capital case) that the statement and the live testimony are untrue.

Because the majority opinion gives no assurance that Lockemy's written statement containing the hearsay can be introduced by way of Lockemy's testimony only if Lockemy is subject to cross-examination, or otherwise condition its introduction upon the availability of Lockemy for cross-examination concerning the statement, I cannot join the majority opinion.