An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-291
NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

IN THE MATTER OF:                              Stokes County
A.A.                                           Nos. 11 JA 27-28
L.A.


Appeal by respondent from orders entered 26 April 2013 and 15 October 2013 by Judge Angela Puckett in Stokes County District Court. Heard in the Court of Appeals 30 June 2014.

> *Administrative Office of the Courts, by Appellate Counsel Tawanda N. Foster, for guardian ad litem.*
>
> *Mary McCullers Reece for respondent-appellant father.*


ELMORE, Judge.


Respondent-father appeals from two orders. The first order relieved the Stokes County Department of Social Services ("DSS") from further efforts toward reunification as to minor children A.A. ("Adam") and L.A. ("Lisa").[1] The second order awarded guardianship of the minor children to their maternal aunt and uncle, Mr. and Mrs. A. Respondent-father preserved his right to

---

[1]We use pseudonyms to protect the children's privacy.

appeal the order ceasing reunification efforts and filed notice of appeal from both orders. *See* N.C. Gen. Stat. §§ 7B-507(c), 7B-1001(a)(4), (5)b., (b) (2013).

## I.  Procedural History

At the time of his birth in May 2008, Adam tested positive for opiates, cocaine, and amphetamines.  Lisa also tested positive for opiates and cocaine when she was born in April 2011.  During its investigation of the family in May 2011, DSS conducted a pill count of respondent-father's Vicodin, Flexeril, and Adderall prescriptions and found that "all medication [was] short of the recommended dosage."  On 13 May 2011, respondent-father refused to submit to a random drug screen requested by DSS and exhibited symptoms of intoxication.

On 6 June 2011, DSS obtained non-secure custody of Adam and Lisa and filed petitions[2] alleging that they were neglected juveniles as defined by N.C. Gen. Stat. § 7B-101(15) (2013). The trial court entered adjudications of neglect on 8 November 2011.  Respondent-mother stipulated that her substance abuse prevented her from caring for the children.  Respondent-father was incarcerated for defrauding a drug screen while on probation

---

[2]We note the petition filed in 11 JA 28 is not included in the record on appeal.

in September 2011. He was released from prison on 27 February 2012, and signed a case plan with DSS on 9 March 2012.

The trial court ceased reunification efforts as to respondent-mother on 19 April 2012. Respondent-father worked on his case plan by visiting with the children, obtaining stable housing and employment, complying with random drug screens, and attending substance abuse treatment and anger management counseling with John Pulliam of Choose Life Addiction Recovery Services. Following a review hearing on 20 December 2012, the trial court authorized a trial placement of the children in respondent-father's home. In response to the guardian ad litem's report that respondent-father had allowed respondent-mother to speak to Adam and Lisa by telephone, the court expressly forbade any contact between the children and their mother.

After a review hearing on 21 March 2013, the trial court entered an order terminating the children's trial placement and relieving DSS of further efforts to reunify the children with respondent-father. The trial court also held a permanency planning hearing on 5 September 2013 and entered an order on 15 October 2013, changing Adam and Lisa's permanent plan from reunification with respondent-father to guardianship and

awarding guardianship of the children to their maternal aunt and uncle, Mr. and Mrs. A.

## II. Ceasing Reunification Efforts

On appeal, respondent-father claims that the trial court erred in ceasing reunification efforts under N.C. Gen. Stat. § 7B-507(b)(1) (2013). He contends that many of the trial court's findings of fact in support of its decision constitute mere recitations of witness testimony or are unsupported by the evidence. The remaining findings, respondent-father argues, are insufficient to support the trial court's conclusion that further reunification "efforts clearly would be futile or would be inconsistent with the juvenile[s'] health, safety, and need for a safe, permanent home within a reasonable period of time[.]" N.C. Gen. Stat. § 7B-507(b)(1).

"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007) (citation omitted). Under N.C. Gen. Stat. § 7B-507(b)(1) (2013), "[a] trial court may cease

reunification efforts upon making a finding that further efforts would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]" *Id*. at 214, 644 S.E.2d at 594 (quotation omitted). Though characterized as a finding or "'ultimate finding[,]' the determination that grounds exist to cease reunification efforts under N.C.G.S. § 7B-507(b)(1) is in the nature of a conclusion of law that must be supported by adequate findings of fact." *In re E.G.M.*, __ N.C. App. __, __, 750 S.E.2d 857, 867 (2013) (quoting *In re I.R.C.*, 214 N.C. App. 358, 363, 714 S.E.2d 495, 499 (2011); citing *In re I.K.*, __ N.C. App. __, __, 742 S.E.2d 588, 595 (2013)).

We conclude that the review order entered on 26 April 2013 lacks sufficient findings of fact to support the trial court's ultimate finding under N.C. Gen. Stat. § 7B-507(b)(1). "[A] proper finding of facts requires a specific statement of the facts on which the rights of the parties are to be determined, and those findings must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment." *Quick v. Quick*, 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982). This Court has repeatedly emphasized that "'[r]ecitations of the testimony of each witness *do not*

constitute *findings of fact* by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented.'" *Moore v. Moore*, 160 N.C. App. 569, 571-72, 587 S.E.2d 74, 75 (2003) (quoting *In re Green*, 67 N.C. App. 501, 505 n.1, 313 S.E.2d 193, 195 n.1 (1984)) (emphasis in original).

It appears that the trial court's decision to cease reunification efforts was based primarily on evidence that respondent-father had abdicated his role as the children's caretaker and/or exposed the children to contact with respondent-mother during the trial placement. Of particular concern were the amount of time Lisa had spent in the care of her paternal grandmother, rather than respondent-father, and the whereabouts of both children on the night and morning of 13-14 March 2013. After hearing conflicting evidence on these issues, however, the trial court failed to enter affirmative findings of fact to resolve them.[3] Instead, it summarized the conflicting accounts of respondent-father, his brother, and his mother and found generally that respondent-father's "testimony, under oath, was untruthful and not credible in any way." While it is

---

[3]The court announced in open court "that at least one of the children was staying with her grandmother" but did not include this finding in its written order.

possible to construe this finding as an implicit adoption of the testimony of respondent-father's mother and brother, it is not the role of this Court to infer necessary findings where none appear. *See State v. Brown*, 314 N.C. 588, 596, 336 S.E.2d 388, 393 (1985) ("It is the duty of the finder of fact, not this Court, to resolve disputed questions of fact."); *see also In re A.S.*, 190 N.C. App. 679, 691, 661 S.E.2d 313, 321 (2008) (remanding for more specific dispositional findings where the trial court found that "the statements set forth in the Court Report of [the] social worker . . . are true and the statements set forth in the Court Report of guardian ad litem . . . are true"), *aff'd per curiam*, 363 N.C. 254, 675 S.E.2d 361 (2009).

We agree with respondent-father that the remaining findings do not support the trial court's determination that further reunification efforts "would clearly be futile and inconsistent with the juveniles' health, safety, and need for a safe, permanent home within a reasonable amount of time." Finding 22 states that respondent-father "has not been taking care of the children as court ordered in the trial placement." However, the order authorizing the trial placement contains no specific directives regarding the children's care other than (1)

obtaining daycare approved by DSS;[4] (2) providing bi-weekly and Christmas visitation to Mr. and Mrs. A.; and (3) forbidding contact "between the children and the mother." The trial court neither made findings that respondent-father violated these provisions[5] nor did it make any evidentiary findings that would logically support a conclusion that respondent-father violated the terms of the 18 February 2013 trial placement order.

Finding 23 states generally that respondent-father "'did his own thing,' after trial placement, stopped complying with his case plan, and in fact made no further effort on his case plan, regressing on his case plan." The only specific findings that address respondent-father's compliance with his case plan are as follows:

> 19. [Respondent-father] noted that he'd been ordered to continue his counseling [at] "a court date before last, to continue his anger management classes, but he had, as of the last court date, a letter of completion for his substance abuse treatment and anger management." He stopped going to the sessions.
>
> 20. [Respondent-father] did not complete his drug counseling, as he's been ordered.

[4]Both the trial court and DSS agreed to respondent-father's proposal to allow his mother to provide daycare for the children from 20 December 2012 until 2 January 2013.

[5]Respondent-father testified that his children attended MudPies daycare at the time of the 21 March 2013 hearing.

21.    [Respondent-father] had maintained weekly contact with DSS as ordered until 1-19-13.  [He] failed to contact DSS again until 2-12-13.  [He] did not provide DSS with a copy of his work schedule as DSS requested on 2-15-13 until 3-7-13.

As for Finding 20, the evidence showed that John Pulliam certified by letter dated 24 November 2012 that respondent-father had "successfully completed his individualized treatment program with CHOOSE LIFE" and that "[a]nger management and relapse prevention education and training have been provided." The trial court held a permanency planning hearing five days later.  In the resulting order entered 22 January 2013, the trial court acknowledged Pulliam's letter but ordered respondent-father "to continue counseling with John Pulliam, where he will also address his anger issues in the counseling sessions."  However, the trial court held a review hearing on 20 December 2012 and authorized the children's trial placement with respondent-father in an order entered 18 February 2013.  In this order, the trial court found that respondent-father "is successfully working his case plan" and made no reference to a requirement that he continue counseling with Pulliam.  The order is likewise silent as to respondent-father's need for further "drug counseling" as stated in Finding 20.

By the time of the 20 December 2012 review hearing, respondent-father had ceased his counseling with Pulliam. Had the trial court deemed additional counseling to be necessary, we find it reasonable to assume that it would have noted the issue in its 18 February 2013 order and directed respondent-father to resume his counseling as a condition of the trial placement. Under these circumstances, respondent-father's failure to attend counseling with Pulliam from 20 December 2012 until the next review hearing on 21 March 2013 is insufficient to justify a ceasing of reunification efforts under N.C. Gen. Stat. § 7B-507(b).

Finding 21, which is uncontested, notes that respondent-father missed two weekly contacts with DSS and delayed notifying DSS of his work schedule. *See generally Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (ruling that uncontested findings are binding on appeal). However, we do not believe that these omissions support the trial court's assessment in Finding 23 that respondent-father "stopped complying with his case plan, and in fact made no further effort on his case plan" after the trial placement was approved on 20 December 2012. Rather, Finding 21 notes that respondent-father contacted DSS on

12 February 2013 and provided his work schedule on 7 March 2013.[6]

"There is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings, resolving any material disputes." *In re C.L.C.*, 171 N.C. App. 438, 446, 615 S.E.2d 704, 708 (2005), *aff'd per curiam*, 360 N.C. 475, 628 S.E.2d 760-61 (2006). "Where there is directly conflicting evidence on key issues, it is especially crucial that the trial court make its own determination as to what pertinent facts are actually established by the evidence, rather than merely reciting what the evidence may tend to show." *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 366 (2000) (citations omitted). In the case *sub judice*, the trial court failed to resolve the evidentiary disputes most salient to its decision under N.C. Gen. Stat. § 7B-507(b)(1). Therefore, we must remand for further findings on this issue.

---

[6]The 15 October 2013 order that awards guardianship to Mr. and Mrs. A. includes additional findings regarding respondent-father's non-compliance with his case plan after reunification efforts ceased. However, we find no statutory authority to consider these subsequent findings in our review of the 26 April 2013 order ceasing reunification efforts. *But cf. In re L.M.T.*, 367 N.C. 165, 170, 752 S.E.2d 453, 456-57 (2013) (Because N.C. Gen. Stat. § 7B-1001(a)(5)(a) (2013) directs the appellate court to "review the order to cease reunification together with an appeal of the termination of parental rights order, . . . . incomplete findings of fact in the cease reunification order may be cured by findings of fact in the termination order.")

## III. <u>Guardianship</u>

In light of our decision to vacate the order ceasing reunification efforts, respondent-father contends that we must also vacate the succeeding order that changed the children's permanent plan and awarded guardianship to Mr. and Mrs. A. We agree. Because additional findings are needed to determine whether DSS must continue its reasonable efforts to reunify the children with respondent-father under N.C. Gen. Stat. § 7B-507(b), we must also vacate the subsequent permanency planning order entered 15 October 2013. *In re I.K.*, __ N.C. App. at __ n.6, 742 S.E.2d at 596 n.6 (rejecting the "argument that we need only look to whether the court properly concluded that guardianship is in the child's best interest without considering the adequacy of the court's findings under §§ 7B-507 and 7B-907").

## IV. <u>Conclusion</u>

The 26 April 2013 order ceasing reunification efforts is hereby vacated. We remand for the entry of additional findings of fact on the need for DSS to make further reunification efforts under N.C. Gen. Stat. § 7B-507. *See id.* at __, 742 S.E.2d at 596. "The [trial] court may receive additional evidence on this issue, within its sound discretion." *In re*

*E.G.M.*, __ N.C. App. __, __, 750 S.E.2d 857, 868 (2013) (citation omitted). The permanency planning order entered 15 October 2013 is also vacated.

Vacated and remanded.

Chief Judge MARTIN and Judge HUNTER, Robert N., concur.

Report per Rule 30(e).